**[ORAL ARGUMENT NOT YET SCHEDULED]**

No. 22-5251

———————————

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

**TSUNAMI KHAN, ALSO KNOWN AS MICHAEL S. OWLFEATHER-GORBEY,**
Plaintiff – Appellant,

**v.**

**AVERY, CAPT, USP THOMPSON, ET AL.,**
Defendants – Appellees.

———————————

**Appeal from the United States District Court
for the District of Columbia**

———————————

**OPENING BRIEF OF AMICUS CURIAE IN SUPPORT OF
APPELLANT TSUNAMI KHAN**

Erica Hashimoto
*Director*

Eva Shell
*Supervising Attorney*

Alexis R. Casanas
Sonia Geba
*Student Counsel*

Georgetown University Law Center
Appellate Litigation Program
111 F Street NW, Suite 306
Washington, D.C. 20001
(202) 662-9555
eh502@georgetown.edu

*Counsel for Amicus Curiae
in Support of Appellant*

October 30, 2023

## CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), amicus curiae Erica Hashimoto, appointed to present arguments in support of Mr. Khan, hereby submits the following certificate as to parties, rulings, and related cases.

## I.    Parties and Amici

The parties to this proceeding in the district court and this Court are: Plaintiff/Appellant Tsunami Khan, also known as Michael S. Owlfeather-Gorbey[1]; and Defendants/Appellees: Captain  Avery, USP Thompson[2]; Warden, [name unknown]; [first name unknown] Doles; [first name unknown] Grumwald; [first name unknown] Bouse; [first name unknown] King; Health Service Supervisor, [name unknown]; Counselor [first name unknown] Barnes; Counselor [first name unknown] Graham; USP Thompson John or Jane Doe Administrative Remedy Clerk; United States in place of Judge Philip G. Reinhard and Judge Iain D. Johnston; United States Attorney General; Director,

---

[1] This Brief will refer to Appellant as Tsunami Khan.  The Federal Bureau of Prisons' records identify him as Michael Gorbey.

[2] Mr. Khan's filings refer to this prison as USP "Thompson," but the correct spelling is "Thomson."

i

Federal Bureau of Prisons; Director, Administrative Office of Federal Courts; and U.S. Senate Judiciary Committee Members.

This Court appointed Erica Hashimoto, Director of the Appellate Litigation Clinic at Georgetown University Law Center, as amicus curiae in support of Mr. Khan.

## II.    Rulings Under Review

This appeal challenges the August 5, 2022 order of the United States District Court for the District of Columbia, the Hon. Florence Y. Pan, denying Mr. Khan's application to proceed *in forma pauperis* and dismissing Mr. Khan's complaint and civil action.

## III.    Related Cases

This case has not previously been before this Court, and amicus is not aware of any related cases.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES................................................................................ i

TABLE OF AUTHORITIES .......................................................... v

GLOSSARY OF ACRONYMS ...................................................... vii

STATEMENT OF JURISDICTION ...............................................1

STATEMENT OF THE ISSUES ....................................................2

STATUTES AND REGULATIONS...............................................3

STATEMENT OF THE CASE .......................................................6

    I.    STATEMENT OF FACTS ..................................................6

        A.  Glaucoma. ...................................................................7

        B.  Physical Assaults......................................................10

    II. PROCEDURAL HISTORY ...............................................15

SUMMARY OF THE ARGUMENT.............................................20

ARGUMENT ..............................................................................22

    I.    MR. KHAN FACED IMMINENT DANGER OF SERIOUS PHYSICAL INJURY WHEN HE FILED HIS APPEAL......................................22

        A.  Mr. Khan demonstrated an imminent danger of serious physical injury through impending blindness and repeated assaults...24

        B.  There was sufficient nexus between the dangers Mr. Khan alleged and the underlying complaint. ....................................33

    II. THE COURT SHOULD ACCEPT MR. KHAN'S IMMINENT DANGER ALLEGATIONS AS TRUE...............................................34

        A.  This court should not consider rebuttal evidence because § 1915(g) is a pleading standard and this Court is not a fact-finding court................................................................................35

B. The government's evidence does not rebut Mr. Khan's allegations of imminent danger. ............................................... 40

III. THIS COURT SHOULD REVERSE THE DISTRICT COURT'S DENIAL OF IFP STATUS AND DISMISSAL OF MR. KHAN'S COMPLAINT. .................................................................. 43

CONCLUSION ................................................................................ 44

CERTIFICATE OF COMPLIANCE ........................................... 46

CERTIFICATE OF SERVICE ..................................................... 47

# TABLE OF AUTHORITIES

## Cases

*Asemani v. U.S. Citizenship & Immigr. Servs.*, 797 F.3d 1069 (D.C. Cir. 2015) ...................................................................................... 23, 36, 40

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................37

*Ashley v. Dilworth*, 147 F.3d 715 (8th Cir. 1998) ...................................30

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) .............................................................................. 1, 33

*Chavis v. Chappius*, 618 F.3d 162 (2d Cir. 2010) ....................... 30, 31, 43

*Ciarpaglini v. Saini*, 352 F.3d 328 (7th Cir. 2003).................... 25, 26, 27

*Erickson v. Pardus*, 551 U.S. 89 (2007) ................................................36

*Gibbs v. Cross*, 160 F.3d 962 (3d Cir. 1998)..........................................27

*Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997)..........................................39

*Hall v. United States*, 44 F.4th 218 (4th Cir. 2022).................... 24, 25, 33

*Ibrahim v. District of Columbia*, 463 F.3d 3 (D.C. Cir. 2006) ... 23, 27, 28, 30, 36, 40

*Ladeairous v. Sessions*, 884 F.3d 1172 (D.C. Cir. 2018)........................43

*McAlphin v. Toney*, 281 F.3d 709 (8th Cir. 2002)............................. 25, 26

*Mitchell v. Fed. Bureau of Prisons*, 587 F.3d 415 (D.C. Cir. 2009) ..23, 37

*Pinder v. McDowell*, 619 F. App'x 565 (8th Cir. 2015) ...........................26

*Pinson v. U.S. Dep't of Just.*, 964 F.3d 65 (D.C. Cir. 2020) . 23, 24, 33, 36, 37, 38, 39, 40

*Pullman-Standard v. Swint*, 456 U.S. 273 (1982)..................................39

*Shepherd v. Annucci*, 921 F.3d 89 (2d Cir. 2019) ..................................39

*Taylor v. Watkins*, 623 F.3d 483 (7th Cir. 2010) .................................... 39

*Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580 (6th Cir. 2013) ... 27, 36

*Williams v. Paramo*, 775 F.3d 1182 (9th Cir. 2015) 24, 30, 31, 36, 37, 38, 39

## Statutes

28 U.S.C. § 1291 ......................................................................................... 1

28 U.S.C. § 1331 ......................................................................................... 1

28 U.S.C. § 1915 .......................................................................... 6, 15, 22, 35

28 U.S.C. § 2671 *et seq.* ....................................................................... 1, 33

## Other Authorities

*Glaucoma*, Mayo Clinic (Sept. 30, 2022), https://www.mayoclinic.org/diseases-conditions/glaucoma/diagnosis-treatment/drc-20372846 ............................................................................... 8

Sana' Muhsen, *Severe Visual Loss and Recovery Post Trabeculectomy- A Case Report*, 10 Am. J. of Ophthalmology Case Reps. 91 (2018), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5816026/pdf/main.pdf ...................................................................................................... 7, 26

## Rules

Fed. R. App. P. 4 .................................................................................. 1, 16

Fed. R. Civ. P. 56 .................................................................................... 35

Fed. R. Civ. P. 65 .................................................................................... 36

# GLOSSARY OF ACRONYMS

IFP:        In forma pauperis

PLRA:     Prison Litigation Reform Act

USP:       United States Penitentiary

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction because Mr. Khan alleges claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* JA3; *see* 28 U.S.C. § 1331.

This Court has jurisdiction because Mr. Khan is appealing from a final judgment of the district court that disposed of all parties' claims. *See* 28 U.S.C. § 1291. The district court specified that its August 5, 2022 order denying Mr. Khan's application to proceed *in forma pauperis* and dismissing his complaint and the civil action was a final order, writing: "This is a final appealable Order." JA26; *see N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020) (explaining that a judgment is final under § 1291 if the district court intended the judgment to be the final decision in the case).

This appeal is timely under Fed. R. App. P. 4(a)(1)(B). Mr. Khan dated his notice of appeal August 30, 2022, and the court docketed it on September 20, 2022. JA2, JA29–30.

## STATEMENT OF THE ISSUES

I.  Whether Mr. Khan faced an imminent danger of serious physical injury when he filed this appeal that would allow him to proceed *in forma pauperis* under 28 U.S.C. § 1915(g).

II.  Whether this Court should accept Mr. Khan's allegations of imminent danger as true when the government has submitted evidence claiming to rebut those allegations.

III.  Whether the district court erred when it denied Mr. Khan *in forma pauperis* status and dismissed his complaint and civil action.

# STATUTES AND REGULATIONS

## 28 U.S.C. § 1915

Proceedings in forma pauperis:

(a)(1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

(2) A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.

(3) An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

(b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of--

 (A) the average monthly deposits to the prisoner's account; or

 (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's

account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

(3) In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action or an appeal of a civil action or criminal judgment.

(4) In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.

(c) Upon the filing of an affidavit in accordance with subsections (a) and (b) and the prepayment of any partial filing fee as may be required under subsection (b), the court may direct payment by the United States of the expenses of (1) printing the record on appeal in any civil or criminal case, if such printing is required by the appellate court; (2) preparing a transcript of proceedings before a United States magistrate judge in any civil or criminal case, if such transcript is required by the district court, in the case of proceedings conducted under section 636(b) of this title or under section 3401(b) of title 18, United States Code; and (3) printing the record on appeal if such printing is required by the appellate court, in the case of proceedings conducted pursuant to section 636(c) of this title. Such expenses shall be paid when authorized by the Director of the Administrative Office of the United States Courts.

(d) The officers of the court shall issue and serve all process, and perform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases.

(e)(1) The court may request an attorney to represent any person unable to afford counsel.

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--

 (A) the allegation of poverty is untrue; or

 (B) the action or appeal--

  (i) is frivolous or malicious;

4

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.

(f)(1) Judgment may be rendered for costs at the conclusion of the suit or action as in other proceedings, but the United States shall not be liable for any of the costs thus incurred. If the United States has paid the cost of a stenographic transcript or printed record for the prevailing party, the same shall be taxed in favor of the United States.

(2)(A) If the judgment against a prisoner includes the payment of costs under this subsection, the prisoner shall be required to pay the full amount of the costs ordered.

(B) The prisoner shall be required to make payments for costs under this subsection in the same manner as is provided for filing fees under subsection (a)(2).

(C) In no event shall the costs collected exceed the amount of the costs ordered by the court.

(g) In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

(h) As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

## STATEMENT OF THE CASE

Mr. Tsunami Khan appeals the district court's denial of his motion to proceed *in forma pauperis* (IFP) and its dismissal of his prison conditions complaint for failure to pay his filing fee in full.  Mr. Khan is subject to the three-strikes rule under the Prison Litigation Reform Act (PLRA), but he may proceed IFP if he faces "imminent danger of serious physical injury."  28 U.S.C. § 1915(g).  Mr. Khan asserts that because he faced and continues to face imminent danger, he is entitled to proceed IFP in both the district court and in this Court.  The issue of imminent danger under § 1915(g) is the only issue before this Court.

## I.      STATEMENT OF FACTS

The following facts are stated in Mr. Khan's filings in the district court and in his filings in response to this Court's show cause order, which incorporated his filings below.  The facts related to imminent danger and the underlying merits claims are interrelated.  Mr. Khan alleges that prison staff denied him medical treatment for glaucoma, resulting in irreversible, worsening vision loss that threatens to completely blind him.  Mr. Khan also describes how prison staff at United States Penitentiary (USP) Thomson instigated and then failed to

6

adequately protect him from repeated physical assaults by other incarcerated people, in retaliation for his persistent filing of legal complaints.

### A. Glaucoma.

Mr. Khan is fifty-three years old and has advanced glaucoma. JA10, JA40–41, JA64. As a result of previous and continuing denied medical care in prison facilities, Mr. Khan alleges that he has lost over 95% of his vision in one eye and over 65% in the other, threatening total blindness. JA70–79, JA116–17.

In May 2020, an ophthalmologist who examined Mr. Khan informed him that he was at high risk of developing "snuff-out" syndrome, which results "in accelerating the eventual outcome of blindness" due to inconsistent treatment over time. JA72.[3] Mr. Khan's physician recommended two ophthalmologists who exclusively perform glaucoma surgery in these types of cases. JA72. Surgery conducted on one eye in July 2020 was unsuccessful. JA75. Mr. Khan was scheduled for another

---

[3] *See* Sana' Muhsen, *Severe Visual Loss and Recovery Post Trabeculectomy- A Case Report*, 10 Am. J. of Ophthalmology Case Reps. 91, 91–95 (2018), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5816026/pdf/main.pdf.

surgery consultation in November 2020, but there is no record of this occurring.  JA75.  The last time an ophthalmologist examined Mr. Khan was in February 2021.  JA40.

From February 2021 through the filing of Mr. Khan's appeal on August 30, 2022, he was denied glaucoma medication and access to ophthalmological care.  When Mr. Khan arrived at USP Thomson in April 2022, he had not had any glaucoma examinations or eye pressure checks[4] in over a year.  JA10.  He was immediately denied his glaucoma medications, which he needed to use continuously to manage his condition and prevent additional damage to his eyes.  JA10, JA41. Mr. Khan tried to file a grievance to access his medications, but Counselor Graham, a defendant in this case, threatened him with adverse housing and physical assaults and refused to hear his grievance. JA11.  In the subsequent months, prison staff began providing Mr. Khan with medications but sometimes delayed his refills for twenty days at a time.  JA41.  On one occasion, Mr. Khan alleges that his eye drops were improperly handled and contaminated with a substance that caused

---

[4] Glaucoma is treated by lowering intraocular pressure. *Glaucoma*, Mayo Clinic (Sept. 30, 2022), https://www.mayoclinic.org/diseases-conditions/glaucoma/diagnosis-treatment/drc-20372846.

"chest pains and near asphyxiation" and "adverse reactions" to his glaucoma medications. JA14.

On September 1, 2022, Mr. Khan thought he was being sent to an ophthalmologist, but he learned later that it was an optometrist. JA40–41, JA124. During this visit the providers never physically examined him and only performed electronic eye scans. JA124. At some point on or before October 28, 2022, an optometrist stressed that Mr. Khan was not to "go any periods of time without his medications as it is a danger of imminent total blindness." JA41. Mr. Khan saw Dr. Tuhy, an optometrist, on November 16, 2022, who reported "[s]evere and worsening visual field loss" and ordered an urgent ophthalmology appointment set for December 1, 2022. JA117, JA131–32.

Mr. Khan never received this care, as he was transferred to USP Coleman on December 14, 2022.[5] JA117. As of June 2023, Mr. Khan still had not been seen by an ophthalmologist. JA117.

---

[5] Ten months after that, Mr. Khan was transferred again to USP Victorville. *See* Unopposed Motion, Docket No. 2022014, at 2.

9

## B. Physical Assaults.

On May 4, 2022, shortly after Mr. Khan arrived at USP Thomson, Captain Avery, a defendant in this case, appeared in Mr. Khan's cell and told him that he was "in for a ride for his prior suits." JA11. Fearing reprisal for his past legal complaints, Mr. Khan tried to file a grievance against Captain Avery with Counselor Graham on May 9, 2022. JA11. Counselor Graham refused to hear the grievance and threatened to physically assault Mr. Khan and move him to adverse housing if he continued to complain. JA11.

A few days later, prison staff began moving Mr. Khan to a series of dangerous housing placements. First, they moved him to a disciplinary unit, where particularly violent people were housed, including an MS-13 gang member. JA11. He was moved again a few days later to a housing unit with people who had murder convictions, and again complained, though the grievance was never processed. JA12. By the end of May, prison staff moved Mr. Khan a third time, this time to a high-security unit with gang members. JA12. His cellmate, Mr. Kowalcyk, was a "425-lbs. sex offender" just off suicide watch, who had a history of assaulting people and was "constantly leaking blood around the cell" after cutting

10

himself.    JA6, JA12.    Captain Avery and psychology personnel conscripted Mr. Khan, without his consent, to be Mr. Kowalcyk's cellmate and to report his suicide attempts.  JA13.  They told Mr. Khan that "the only way he could get out of the cell is kill or seriously assault Kowalcyk."  JA13.

In early June 2022, prison staff began calling Mr. Khan and Mr. Kowalcyk "child fuckers and rats," causing fights between them and other people.  JA15.  From that point on, Mr. Khan received repeated threats from people in his housing unit.  JA15.  At the same time, prison staff subjected Mr. Khan to harassing cell searches that exacerbated tensions with Mr. Kowalcyk.  JA14–15.

On June 14, 2022, prison staff conducted a shake-down of Mr. Khan and Mr. Kowalcyk's shared cell and told Mr. Kowalcyk that Mr. Khan had "ratted on him for cutting himself."  JA15–16.  Mr. Khan asked to be separated from his cellmate, but staff refused and told him that there had to be an altercation before they could be separated.  JA16.  Once the staff had departed, Mr. Kowalcyk struck Mr. Khan two times on the back of the head and neck.  JA16.  Mr. Khan's calls for help by triggering the cell alarm were ignored.  JA16.  Mr. Kowalcyk assaulted Mr. Khan twice

more in the following days, hitting him on the back, neck, and right hand, and attempted another assault on June 21, 2022.  JA17–19.  When Mr. Khan tried to file a grievance, Captain Avery refused to accept it and said, "sue me again if you want." JA17–18.

These assaults aggravated existing serious nerve damage in Mr. Khan's neck, back, and arm, and worsened a previous fracture in his right hand.  JA17–18, JA43, JA64.[6]  He saw a physical therapist for the nerve damage on July 13, 2022, who noted limited strength and mobility in the affected areas.  JA114, JA124, JA128.  Although physical therapy caused more pain and mobility limitations, Mr. Khan received no further treatment, and he was denied an MRI to assess the extent of his injuries.  JA44–45, JA123.  If left untreated, these injuries could cause paralysis. JA44.

By July 2022, the rumors prison staff had started about Mr. Khan being a child molester and a traitor continued to spread, and staff

_____

[6] Ten months earlier, on August 9, 2021, prison staff at a previous facility assaulted Mr. Khan, injuring his neck and fracturing his right hand. JA17–18, JA43, JA124.  In January 2022, he was seen virtually by a doctor who, without physically examining him, prescribed physical therapy for nerve damage in his neck, back, and arm. JA43, JA64–65. Six months after the assault, an x-ray revealed the hand fracture.  JA18.

encouraged other incarcerated people to assault and threaten him.  A few weeks after Mr. Kowalcyk's assaults, prison officials put Mr. Khan in a cell with a person, Mr. Riggs, who had a history of violence and mental illness.  JA39, JA58.  On July 13, 2022, Mr. Riggs and Mr. Ray, another incarcerated individual, each assaulted Mr. Khan.  JA38-39.  Mr. Ray called Mr. Khan "a rat and a child molester" and spit "a large spray of fluids" into his face—during the COVID-19 pandemic and Monkeypox epidemic.  JA38.  Staff took no action against Mr. Ray.  JA38.  Mr. Riggs beat Mr. Khan later that same day while staff watched.  JA39.

On August 28, 2022, staff members again labeled Mr. Khan a child molester, left Mr. Riggs and Mr. Khan in a cell together, and incited Mr. Riggs to assault Mr. Khan.  JA35.  Mr. Riggs struck Mr. Khan at least twice and threatened to kill him if he did not leave their cell.  JA35, JA58.  Mr. Riggs kicked Mr. Khan, struck him on the head with an object in his hand, and hit him two more times.  JA58.  When Mr. Khan tried to request assistance, one staff member told him that "they could learn to fuck or fight," removed Mr. Riggs' handcuffs, and watched Mr. Riggs hit Mr. Khan, saying, "that's what sex offenders get at USP Thomson." JA35, JA58.  This assault caused a lump, "serious swelling," and

discoloration on the right side of Mr. Khan's head and ear. JA59. Mr. Khan triggered the cell alarm five times and called for help twice more during this attack to no avail. JA34, JA58. He submitted sick calls four times in the days after the attack; staff ignored him. JA35. Prison staff continued to spread rumors that Mr. Khan was a sex offender. JA59.

Finally, after two weeks and multiple beatings, Mr. Khan was seen by a nurse on September 11, 2022, who reported several injuries: a possible concussion, a damaged ear leaking blood, a swollen and popping jaw, and "possible ear drum damage from the blows to the head." JA35, JA115, JA129. Mr. Khan told the nurse that he had been assaulted. JA130. She ordered x-rays and treatment for a possibly fractured jaw. JA35–36, JA130. Mr. Khan received x-rays but no further treatment, despite suffering ongoing headaches, pains in his right ear and jaw, and impaired hearing. JA35–36, JA59.

On October 15, 2022, the rumors prison officials had spread were still inciting threats against Mr. Khan. JA37. Staff members "turn[ed] loose" a "hostile inmate," who Mr. Khan refers to as "5-4," from Mr. Riggs' and Mr. Ray's gang-affiliated housing unit to Mr. Khan's housing unit.

14

JA37.  Mr. 5–4 yelled at Mr. Khan that he was a "rat" and threatened to assault and kill him.  JA37.

Mr. Khan continued to experience assault-aggravated pain.   In September and October 2022, he asked to see a physician for his nerve damage, but he was told that he had already been seen.  JA44–45.  As of June 2023, he still had not been physically examined.  JA123-24.[7]

## II.   PROCEDURAL HISTORY

On June 22, 2022, Mr. Khan filed a pro se complaint in the district court against Captain Avery, USP Thomson, and other parties affiliated with the Federal Bureau of Prisons and the United States government, alleging physical assaults by incarcerated people, denial of treatment for glaucoma, and retaliation by prison staff.  JA3–21.  That same day, he applied to proceed IFP under the PLRA's imminent danger exception, 28 U.S.C. § 1915(g), reiterating his allegations of assaults and denied

---

[7]  Mr. Khan also alleges that prison staff continued to place him with previous cellmates who were a danger to him after he filed his appeal. He states in his Appellant's Brief before this Court that on December 1, 2022, prison staff once again tried to house him with Mr. Riggs, even though Mr. Riggs had previously assaulted him.  Appellant Brief, Docket No. 2019291, at 18.

medical treatment. JA23–24. The complaint and IFP application were docketed by the district court on July 14, 2022. JA3, 23.

The district court denied Mr. Khan IFP status and dismissed the case without prejudice, finding that he had not met the imminent danger exception. JA25–26. The court's reasoning for the denial was: "Plaintiff has not shown that he qualifies." JA25. The district court directed Mr. Khan to move to reopen his civil action and pay the filing fee in full if he wished to proceed. JA26. Mr. Khan does not have the means to pay the filing fee, as he is unemployed and indigent. JA23–24.

Mr. Khan timely appealed the denial of IFP status and the dismissal of his case on August 30, 2022, and his notice was docketed on September 20, 2022. JA29–30; *see* Fed. R. App. P. 4(a)(1)(B). He requested IFP status under the imminent danger exception for his appeal. JA29. This Court ordered Mr. Khan to show cause why he should not be required to pay the full appellate filing fee. Clerk's Order, Docket No. 1966485, at 1. Mr. Khan responded by alleging imminent danger in the form of abuse and retaliation by prison staff, assaults by other incarcerated people, and denial of medical treatment for glaucoma and assault-aggravated injuries. JA33–84. After receiving Mr. Khan's

response, this Court discharged the show cause order and ordered the United States to enter an appearance and respond to Mr. Khan's response. Per Curiam Order, Docket No. 1987115, at 1. This Court further authorized Mr. Khan to file a reply to the government's response. *Id.*

The government's responsive filing introduced a declaration from Timothy Moisant, a Health Services Administrator at USP Thomson who is a defendant in this suit.[8] JA87–108. Mr. Moisant reviewed Mr. Khan's medical records from May 9, 2022, through December 8, 2022. JA101. He listed the medications Mr. Khan was prescribed for his glaucoma and the dates the medications were allegedly refilled. JA102–03. Based on Mr. Moisant's review of the records, he concluded that Mr. Khan "has not missed any of his prescription medication for his glaucoma." JA104. Mr. Moisant noted the dates when Mr. Khan had clinic visits and eye exams at USP Thomson and declared that Mr. Khan had one external ophthalmology consultation on September 1, 2022. JA102–03.

---

[8] Mr. Khan listed Mr. Moisant as "Health Service Supervisor" in his complaint. JA6.

Mr. Moisant recounted that Mr. Khan was given medication, physical therapy, and clinic visits for pain in his neck, shoulder, and back. JA104–07. He described a clinic visit on September 11, 2022, in which Mr. Khan said he had been assaulted two weeks earlier and had pain in his jaw and ear. JA106. The provider noted fluid draining from Mr. Khan's ear, but x-rays showed no fractures. JA106. Mr. Moisant claimed that Mr. Khan did not mention any other assaults during his clinic visits. JA107.

Mr. Khan filed a sur-reply to the government's response, as well as a supplement with exhibits, reiterating his claims of physical assaults and denied glaucoma treatment. JA112–36.

After receiving Mr. Khan's sur-reply, this Court appointed undersigned counsel as amicus curiae in support of Mr. Khan. Per Curiam Order, Docket No. 2010386, at 1-2. This Court requested briefing on (1) whether Mr. Khan has alleged a pattern of conduct placing him in imminent danger of serious physical injury, based on his allegations of individual incidents occurring before the filing of the complaint and before and after the filing of the appeal, such that he is entitled to proceed IFP; and (2) whether this Court should accept as true Mr. Khan's

18

allegations of danger where the government seeks to rebut those allegations with its own evidence. *Id.*

On August 31, 2023, Mr. Khan moved this Court for a stay of the appeal or, in the alternative, for summary reversal. Motion, Docket No. 2018046, at 1, 19. This Court denied the motion. Per Curiam Order, Docket No. 2020373, at 1. Mr. Khan's Appellant's Brief and Appendix were docketed on September 26 and 27, 2023. Appellant Brief, Docket No. 2019291, at 1; Appendix, Docket No. 2019336, at 1.

## SUMMARY OF THE ARGUMENT

Mr. Khan faced imminent danger of serious physical injury when he filed his appeal and should therefore be permitted to proceed on appeal IFP under 28 U.S.C. § 1915(g).  Mr. Khan alleges not just one, but two, imminent dangers: impending blindness due to denied medical care for his advanced glaucoma, as well as physical assaults by other incarcerated people, which prison officials instigated.  These are serious dangers under § 1915(g), because they resulted in disabling, life-altering harm and significant physical injuries.  The dangers are also imminent, because they were ongoing over many months and threatened future harm at the time when Mr. Khan filed his appeal.  Furthermore, there was a sufficient nexus between these dangers and Mr. Khan's underlying complaint, as the imminent dangers arise from the same harms he alleged in his complaint.

This Court should accept Mr. Khan's imminent danger allegations as true and should not consider the government's proposed evidence.  Section 1915(g) is a pleading standard, not an adversarial evidentiary inquiry.  Allowing the government to rebut Mr. Khan's claims would undermine this Court's holdings that it liberally construes incarcerated

20

persons' allegations of imminent danger and accepts their factual allegations as true. It would also increase litigation over a threshold procedural issue, even though the PLRA is meant to reduce the amount of litigation brought by incarcerated people. Furthermore, appellate courts are not fact-finding courts and generally cannot consider new evidence on appeal. Even if, however, this Court were to consider the government's evidence, the proposed affidavit fails to rebut Mr. Khan's allegations of imminent danger.

If this Court determines that Mr. Khan has sufficiently alleged imminent danger to proceed with his appeal, the Court should reverse the district court's denial of Mr. Khan's IFP status and the dismissal of his complaint. The dangers he alleged in June 2022, when he filed his complaint, and those alleged in August 2022, when he filed his notice of appeal, were the same sufficiently serious and sufficiently imminent dangers with a nexus to his underlying complaint.

**ARGUMENT**

## I.   MR. KHAN FACED IMMINENT DANGER OF SERIOUS PHYSICAL INJURY WHEN HE FILED HIS APPEAL.

The PLRA's three-strikes rule ordinarily bars incarcerated people from bringing complaints or appeals IFP if they have previously brought three actions or appeals that were dismissed for certain reasons.   28 U.S.C. § 1915(g).   Mr. Khan qualifies for an exception under § 1915(g), which allows a plaintiff with three strikes to proceed IFP if he faces "imminent danger of serious physical injury."   *Id.*   Section 1915(g) states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

*Id.*

Mr. Khan alleges two types of imminent danger of serious physical injury: (1) prison officials continuously denied him necessary treatment for his glaucoma, which is causing blindness, and (2) prison officials repeatedly housed him with violent people who assaulted him.   To proceed on appeal IFP, Mr. Khan need only demonstrate an imminent

danger under § 1915(g) at the time he filed his notice of appeal.  *See Pinson v. U.S. Dep't of Just.*, 964 F.3d 65, 69–70 (D.C. Cir. 2020).[9]  This Court should review Mr. Khan's imminent danger allegations raised on appeal by looking to his timely filings, construing them liberally, and accepting the factual allegations in them as true.  *Id.* at 70; *Mitchell v. Fed. Bureau of Prisons*, 587 F.3d 415, 420 (D.C. Cir. 2009); *see infra*, Part II.  Because Mr. Khan's complaint and notice of appeal were filed only ten weeks apart, his filings in both the district court and in this Court are relevant to a showing of imminent danger at the time of appeal.

Mr. Khan's allegations entitle him to proceed on appeal IFP because he has alleged dangers that are (a) sufficiently *serious*, resulting in a risk of life-altering or disabling harms, and (b) sufficiently *imminent*, as evidenced by the ongoing pattern of threats to his health and safety.  *See Ibrahim v. District of Columbia*, 463 F.3d 3, 7 (D.C. Cir. 2006); *Hall v.*

---

[9] Parts I and II of this brief address Mr. Khan's entitlement to proceed on appeal IFP because that is a threshold question for this Court.  *See Asemani v. U.S. Citizenship & Immigr. Servs.*, 797 F.3d 1069, 1073 (D.C. Cir. 2015).  Part III addresses Mr. Khan's right to proceed in the district court IFP.  Because much of the analysis in Part I will also apply to this Court's review of the district court's findings, Part III will refer back to the relevant parts of Part I to address the district court's error in denying Mr. Khan's IFP status.

*United States*, 44 F.4th 218, 226–27 (4th Cir. 2022); *Williams v. Paramo*, 775 F.3d 1182, 1189-90 (9th Cir. 2015).   Finally, Mr. Khan has established a sufficient nexus between the imminent dangers alleged and his underlying claims.  *See Pinson*, 964 F.3d at 71.

### A.  Mr. Khan demonstrated an imminent danger of serious physical injury through impending blindness and repeated assaults.

Mr. Khan qualifies for the § 1915(g) imminent danger exception because he has demonstrated that he was under not just one imminent danger, as required under the statute, but two.  Mr. Khan alleged both an ongoing denial of needed glaucoma treatment and a pattern of assaults and threats, resulting in life-altering and near-total blindness and head and neck trauma.  Mr. Khan thus demonstrates a sufficiently serious and imminent risk of physical injury.

#### 1. *The denial of medical care for Mr. Khan's glaucoma, which continues to threaten him with irreversible and life-altering blindness, sufficiently demonstrated an imminent danger.*

Mr. Khan's allegations of repeated denials of glaucoma treatment over a period of twenty-seven months through the time of his appeal satisfy the imminent danger standard.  The danger of worsening glaucoma symptoms and eventual decline into irreversible blindness is sufficiently serious to meet the § 1915(g) standard, because this harm is

24

life-altering and disabling and has already resulted in the loss of 95% of vision in one eye and 65% in the other.  JA70–79, JA117.  Mr. Khan alleges that he has not seen an ophthalmologist since February 2021, and that his medication refills have been repeatedly delayed by five to twenty days at a time, causing significant damage.  JA10, JA40–41.

Mr. Khan's glaucoma is severe; indeed, it is dramatic and life-altering.  Delayed or denied medical treatment need only result in a risk of severe bodily harm for resulting injuries to be sufficiently serious for the imminent danger exception.  *Hall*, 44 F.4th at 227; *see Ciarpaglini v. Saini*, 352 F.3d 328, 330–31 (7th Cir. 2003); *McAlphin v. Toney*, 281 F.3d 709, 710–11 (8th Cir. 2002).  In *Hall*, the Fourth Circuit held that chronic, non-fatal conditions like asthma and chronic obstructive pulmonary disease, which incrementally worsened due to denied treatment, could be sufficiently serious for the imminent danger exception because they could result in severe bodily harm.  44 F.4th at 221, 226–27.  In *McAlphin*, a "spreading infection" in a person's mouth that required five dental extractions was sufficiently serious, because it caused severe pain and a need for additional future extractions.  281 F.3d at 710–11.  Similarly, in *Ciarpaglini*, panic attacks that resulted from discontinuing psychiatric

25

medication qualified because they caused heart palpitations, chest pains, labored breathing, choking sensations, and temporary paralysis. 352 F.3d at 330.

Mr. Khan asserts that lack of treatment has already caused irreparable damage to his vision and that without adequate treatment he could go completely blind due to "snuff-out" syndrome. *See* Muhsen, *supra* note 3 (explaining case study of "rare but dreaded" snuff-out syndrome). Mr. Khan's situation is strikingly similar to the plaintiff in *Pinder v. McDowell*, 619 F. App'x 565, 565–66 (8th Cir. 2015), who qualified for the imminent danger exception with allegations that prison staff failed to treat his glaucoma by denying him medication and ophthalmological care. Indeed, Mr. Khan's plight is even more acute. While the plaintiff in *Pinder* alleged 50% vision loss in one eye and 15% in the other, *id.*, Mr. Khan has lost 95% and 65%. JA117. Loss of vision is also the sort of severe, torturous condition and lasting, deleterious, and life-altering effect that *McAlphin* contemplates. 281 F.3d at 710–11. While the plaintiff in *McAlphin* suffered a serious but reversible infection, *id.*, Mr. Khan has already lost so much of his vision that he is

disabled for life.  Mr. Khan needs treatment to prevent an irreversible loss of the vision he has left.

Prison staff at USP Thomson exacerbated Mr. Khan's harm by contaminating his eye drops, causing "chest pains and near asphyxiation and adverse reactions to his glaucoma med[ications]."  JA14.  These resemble the harms alleged in *Ciarpaglini*, 352 F.3d at 330, except that Mr. Khan's harms are even more serious, because he requires glaucoma medication to prevent permanent blindness.  Considering the extent and severity of these medical dangers, they are sufficiently *serious* to support a finding of imminent danger of serious physical injury.

The denial of Mr. Khan's glaucoma treatment also meets § 1915(g)'s imminence standard.  In the medical context, an imminent danger is one that continues manifesting over time or develops incrementally and will likely cause additional serious physical injury in the future.  *Ibrahim*, 463 F.3d at 6–7; *see also Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 587 (6th Cir. 2013) (holding that the failure to treat a chronic illness satisfies § 1915(g) because incremental harm may present a danger equal to harm that results from an injury that occurs all at once); *Gibbs v. Cross*, 160 F.3d 962, 967 (3d Cir. 1998) (concluding that § 1915(g)

27

requires only allegations of a condition that poses a *risk* of serious physical injury in the near future, not an *existing* serious physical injury).

In *Ibrahim*, an incarcerated plaintiff alleged that denied medical treatment for Hepatitis C and prostate cancer resulted in ongoing organ damage, placing him at heightened risk for other injuries. 463 F.3d at 5. This Court held that the prison's failure to provide treatment for chronic diseases constituted imminent danger because the plaintiff would continue to suffer future harm from his conditions without adequate treatment. *Id.* at 7.

When Mr. Khan filed his appeal, the denial of his glaucoma treatment had been ongoing for many months and continued to threaten future irreversible blindness. The denial of treatment started before he arrived at USP Thomson in late April 2022 and remained unresolved when he filed his appeal on August 30, 2022. JA10, JA117. Throughout his time at USP Thomson, prison staff delayed and denied his access to his glaucoma medications for up to twenty days at a time. JA10, JA40–41. As of June 2023, he was still being denied consistent treatment and had not been examined by an ophthalmologist since February 2021—twenty-seven months. JA117. He alleges that his unaddressed

28

glaucoma has resulted in an irreversible deterioration of his vision, and that it will continue to lead to a gradual, worsening loss and, ultimately, complete blindness. JA40–42, JA116–17. This ongoing danger is thus sufficiently *imminent* to support a finding of imminent danger of serious physical injury.

>    2. *Mr. Khan's allegations that he was assaulted by dangerous people with whom prison staff continued to house him sufficiently establishes an imminent danger.*

Even if this Court were to find the risk of blindness insufficient under § 1915(g), Mr. Khan's allegations of repeated assaults satisfy the imminent danger standard. Mr. Khan alleges a series of assaults by at least three incarcerated individuals, who inflicted serious injuries on several occasions up through the time of Mr. Khan's appeal. In June 2022, Mr. Kowalcyk's near-daily assaults left Mr. Khan with hand and neck injuries. JA17–18. In July and August 2022, Mr. Riggs attacked Mr. Khan at least three times and caused a possible concussion, a potentially fractured jaw, and long-term injuries like headaches and impaired hearing. JA35–36, JA39, JA58–59.

Repeated physical assaults and threats of assault perpetrated on incarcerated individuals are sufficiently serious to satisfy § 1915(g). *See,*

*e.g.*, *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (finding that a recent assault combined with three subsequent threats qualified); *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998) (finding that being placed near enemies and twice assaulted by those enemies qualified).

The danger of physical assault to Mr. Khan was also sufficiently imminent to meet § 1915(g)'s standard.  A danger is "imminent" when it is an ongoing threat exhibited by a recent incident or pattern of past incidents that give the impression that more threatening incidents are ready to take place.  *Ibrahim*, 463 F.3d at 6–7; *see Williams*, 775 F.3d at 1190; *Chavis*, 618 F.3d at 170.  The dangers Mr. Khan faced stemmed from a continuous pattern of prison staff spreading rumors about him being a child molester, housing him with violent cellmates in retaliation for his prior lawsuits, and ignoring his calls for help and treatment.  The assaults and threats occurred every few weeks and at times almost daily, for months up through August 30, 2022, when Mr. Khan filed his appeal—creating a web of dangers that placed his health and safety in peril every day.

On at least three occasions, prison staff spread false rumors that Mr. Khan was a child molester or a "rat," causing threats and assaults.

JA15, JA35, JA38, JA59.  Rumors circulated by staff that lead to threats of harm satisfy the § 1915(g) imminent danger exception. *Williams*, 775 F.3d at 1190.  In *Williams*, an incarcerated person alleged that prison officials started rumors that she was a child molester, which caused members of a prison gang to repeatedly threaten to kill her.  *Id.* at 1186–87, 1190.  The Ninth Circuit held that these threats of "irreparable harm, injury, and death" adequately amounted to an imminent danger because they were ongoing and arose from the defendants' conduct.  *Id.* at 1190.  Like the plaintiff in *Williams*, Mr. Khan experienced an ongoing sequence of threats—and assaults—arising from prison officials' false rumors that he was a child molester and a "rat."  JA15–16, JA35, JA37–39, JA58.

The retaliatory motivation behind this harm also shows its ongoing nature.  *See Chavis*, 618 F.3d at 165, 170.  Prison officials responded to Mr. Khan's legal complaints and grievances by repeatedly placing him in dangerous housing arrangements, resulting in assaults.  In May 2022, Captain Avery told Mr. Khan that he was "in for a ride for his prior suits." JA11.  Shortly after this encounter, Mr. Khan was put in a cell with Mr. Kowalcyk, who struck Mr. Khan at least four times in June 2022 and

regularly threatened him.  JA12–13, JA15–19.  Another member of this housing unit, Mr. Ray, assaulted Mr. Khan by spitting in his face in mid-July 2022 when COVID-19 and Monkeypox were on the rise.  JA38.  Then Mr. Khan was put in a cell with Mr. Riggs, from the same gang-affiliated unit as Mr. Ray, who assaulted Mr. Khan at least three times over a period of six weeks between mid-July and late August 2022.  JA35, JA39, JA58.  These assaults each arose from dangerous housing placements and intensified over time.

Throughout this pattern of assaults and threats, prison officials ignored Mr. Khan's calls for help and requests for medical treatment.  Between June and August 2022, he triggered the cell alarm or tried to alert staff members to assaults at least ten times with no response.  JA16–19, JA34, JA58.  In September and October 2022, shortly after Mr. Khan filed his appeal, prison staff still ignored his requests to be treated for his assaults.  JA35, JA44–45.  The prison's failure to treat Mr. Khan's injuries has aggravated nerve damage in his neck, back, and arm.  JA43-44.  He was denied an MRI—which is necessary to determine the extent of the nerve damage—and was instead prescribed physical therapy that made his condition worse and could cause irreparable harm,

including paralysis.  JA43–44, JA123–24.  Mr. Khan's alleged dangers were ongoing through the filing of his appeal and were thus sufficiently *imminent* to qualify for the exception under § 1915(g).

## B.  There was sufficient nexus between the dangers Mr. Khan alleged and the underlying complaint.

Mr. Khan satisfies § 1915(g)'s nexus requirement because the imminent dangers he alleges arise from the same harms claimed in his complaint.  To qualify for the PLRA imminent danger exception, there must be a nexus between the claims presented and the imminent danger alleged.  *See Pinson*, 964 F.3d at 71.  This Court has not adopted a precise test for establishing a sufficient nexus between the complaint and the imminent danger, because in *Pinson* the underlying claims lacked a nexus under any articulation of the standard.  *Id.* at 73.

This Court should hold that a nexus is sufficiently shown if the danger an incarcerated plaintiff alleges is connected to the unlawful conduct claimed in his complaint.  *See Hall*, 44 F.4th at 230–31.  Mr. Khan's underlying claims are directly related to the dangers he alleges.  His claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, allege federal prison officials denied him

33

medical care and failed to protect him from violent cellmates. JA3–21.
He claims that the Federal Bureau of Prisons has failed to provide him
with adequate treatment for glaucoma, and that USP Thomson officials
housed him with violent people and then incited those people to attack
him, resulting in repeated serious assaults. JA6–8, JA10–20. The
imminent dangers he alleges arise from the same allegations of unlawful
conduct; thus, there is a sufficient nexus to support a finding of imminent
danger of serious physical injury.

## II.    THE COURT SHOULD ACCEPT MR. KHAN'S IMMINENT DANGER ALLEGATIONS AS TRUE.

Mr. Khan's imminent danger allegations should be liberally
construed and taken as true, and this Court should not allow the
government to attempt to rebut those allegations. Allowing the
government to offer evidence against Mr. Khan's imminent danger
allegations would be inconsistent with § 1915(g)'s plain language, which
does not contemplate an adversarial process. Accepting rebuttal
evidence at this stage would also sharply break with this Court's usual
treatment of the imminent danger inquiry as a mere pleading standard.
No appellate court has held that it may accept evidence rebutting IFP
status, and to do so would be inconsistent with the normal role of

appellate courts.  Even if this Court were to find it appropriate to consider evidence, the government's affidavit does not rebut Mr. Khan's allegations.

### A. This court should not consider rebuttal evidence because § 1915(g) is a pleading standard and this Court is not a fact-finding court.

The text of § 1915(g) does not contemplate an adversarial evidentiary inquiry; it is an administrative decision for this Court to make based on an incarcerated person's allegations.  The statute provides that an incarcerated person with three prior strikes may not file a lawsuit IFP "unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).  There are no provisions instructing parties to submit evidence, setting forth permissible types of evidence, or guiding the courts on how to resolve conflicting evidence.  The Federal Rules of Civil Procedure are likewise silent, indicating that the imminent danger inquiry is not an adversarial process.

This silence contrasts with rules that govern adversarial motions in which evidence is permitted, such as a motion for summary judgment.  Rule 56 instructs parties to support their positions with materials including depositions and affidavits.  Fed. R. Civ. P. 56(c)(1)(A).

Similarly, the rule governing preliminary injunctions accounts for "evidence that is received on the motion." Fed. R. Civ. P. 65(a)(2). Section 1915(g) does not contain similar instructions because it is merely an administrative screening device.

When assessing imminent danger, this Court looks to the incarcerated person's allegations in their timely filings, construes them liberally, and accepts the factual allegations as true. *Pinson v. U.S. Dep't of Just.*, 964 F.3d 65, 70 (D.C. Cir. 2020); *Asemani v. U.S. Citizenship & Immigr. Servs.*, 797 F.3d 1069, 1075 (D.C. Cir. 2015); *Ibrahim v. District of Columbia*, 463 F.3d 3, 6 (D.C. Cir. 2006); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (holding pro se filings must be liberally construed). This treatment "comports with section 1915(g)'s 'limited office' as a 'mere screening device.'" *Pinson*, 964 F.3d at 70 (citation omitted).

Section 1915(g) is "in essence administrative." *Williams v. Paramo*, 775 F.3d 1182, 1190 (9th Cir. 2015). Thus, courts treat it as "a pleading requirement subject to the ordinary principles of notice pleading." *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013) (citation omitted). This Court does not even apply the pleading standard

in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to imminent danger allegations, because IFP proceedings are "nonadversarial and implicate none of the discovery concerns lying at the heart of *Iqbal*." *Mitchell v. Fed. Bureau of Prisons*, 587 F.3d 415, 420 (D.C. Cir. 2009).

Allowing the government to attempt to rebut Mr. Khan's allegations at this stage would significantly undermine the principle of liberal construction and would be inconsistent with this Court's practice of accepting imminent danger allegations as true. Thus, Mr. Khan's allegations of denied medical treatment and intentional housing with violent cellmates who assaulted him should be taken as true, and this Court should not look beyond them.

Considering the government's rebuttal evidence also risks ballooning a threshold procedural issue into a full-blown mini-trial. Congress wanted the PLRA to reduce unnecessary litigation brought by incarcerated people. *Pinson*, 964 F.3d at 68; *Williams*, 775 F.3d at 1190. Part of how it accomplished this was by restricting incarcerated persons' ability to pay filing fees in installments if they had three or more prior actions dismissed for being frivolous or malicious or failing to state a claim, unless they fall under the imminent danger exception. *Pinson*, 964

F.3d at 68. Allowing evidentiary inquiries into this limited exception would spawn mini-trials over the issue of imminent danger. *See id.* at 70; *see also Williams*, 775 F.3d at 1190 (cautioning that an appellate court's "overly detailed review" of imminent danger allegations would contradict the PLRA's purpose).

This case demonstrates the dangers of ballooning litigation and mini-trials that government rebuttal evidence presents. After Mr. Khan responded to this Court's show cause order, the Court ordered the government to enter an appearance and respond to Mr. Khan's allegations. Per Curiam Order, Docket No. 1987115, at 1. Along with its court-ordered response, the government submitted a declaration by USP Thomson's Health Services Administrator. JA100–08. This prompted a sur-reply and a supplement from Mr. Khan challenging the government's assertions. JA112–36. This is a significant amount of litigation over what should be a simple administrative determination.

Moreover, no Court of Appeals has held that it may consider government evidence to rebut imminent danger claims. Those circuits that have allowed rebuttal evidence have held only that *district courts* can conduct narrow evidentiary inquiries into imminent danger claims.

38

*See Shepherd v. Annucci*, 921 F.3d 89, 94–96 (2d Cir. 2019); *Gibbs v. Roman*, 116 F.3d 83, 86–87 (3d Cir. 1997), *overruled on other grounds, Abdul-Akbar v. McKelvie*, 239 F.3d 307, 310–11 (3d Cir. 2001); *Taylor v. Watkins*, 623 F.3d 483, 485–86 (7th Cir. 2010).

This Court must make its own determination of imminent danger at the time of Mr. Khan's notice of appeal. *See Pinson*, 964 F.3d at 69. But appellate courts are not fact-finding courts, and they are generally unable to consider new evidence on appeal. *See, e.g.*, *Pullman-Standard v. Swint*, 456 U.S. 273, 291–92 (1982); *see also Williams*, 775 F.3d at 1190 (explaining that the imminent danger inquiry must be kept to a "limited office" because appellate courts are "ill-equipped to engage in satellite litigation and adjudicate disputed factual matters"). If this Court were to conduct an evidentiary inquiry in this case, it would have to be on the filings only, considering Mr. Khan's allegations against the government's affidavit. Thus, important evidentiary concerns like credibility findings would be impossible. Although the PLRA "assign[s] atypical roles to courts in particular circumstances," appellate courts' atypical role is parsing the appellant's new allegations on appeal for the limited purpose of determining whether they satisfy the requirements of § 1915(g). *See*

*Pinson*, 964 F.3d at 70.  This "atypical role" does not turn appellate courts into trial courts.

This Court should continue to accept incarcerated plaintiffs' imminent danger allegations as true and should not allow evidence that attempts to rebut those allegations.  Expanding this threshold screening device would be inconsistent with both the text and purpose of section 1915(g), spawn unnecessary litigation, and break with the limited role of appellate courts.

### B. The government's evidence does not rebut Mr. Khan's allegations of imminent danger.

Even if this Court were to hold that limited evidentiary inquiries were appropriate in some circumstances, the government's evidence in this case fails to rebut Mr. Khan's allegations of imminent danger.  The proper approach to any consideration of the government's evidence would require this Court, consistent with its precedent, to construe Mr. Khan's allegations liberally and accept them as true.  *See Pinson*, 964 F.3d at 70; *Asemani*, 797 F.3d at 1075; *Ibrahim*, 463 F.3d at 6.  Applying this standard, the government's proposed evidence fails to rebut Mr. Khan's allegations.

The government's evidence does not rebut Mr. Khan's allegations of denied glaucoma care. Mr. Khan alleges that his glaucoma medications have been delayed, that he has not been provided ophthalmological assessments and treatment, and that as a result he has suffered significant and permanent vision loss. *See* JA10–11, JA14–15, JA40–42, JA70–79, JA116–17, JA124 JA131–32. The government's evidence, which merely lists clinic visits and medication refills, fails to fully account for Mr. Khan's allegations. *See* JA101–04.

Listing the dates when providers authorized prescription refills does not contradict Mr. Khan's allegations that staff were mishandling those medications and were not dispensing them in a timely way. *See* JA10, JA14, JA41. Mr. Moisant's affidavit does not rebut Mr. Khan's allegation that when he arrived at USP Thomson in April 2022 he had not seen an ophthalmologist since February 2021. *See* JA10. And while Mr. Moisant claims that Mr. Khan had an ophthalmology consultation in September 2021, Mr. Moisant does not claim to have been present at this appointment. JA103. Mr. Khan, who was present, alleges that the provider was an optometrist who did not physically examine him. JA40–41, JA124. The government's affidavit does not even attempt to challenge

41

Mr. Khan's allegation that because of his poorly treated glaucoma he has lost 95% of his vision in one eye and 65% in the other.  *See* JA117.

The government's affidavit also does not rebut Mr. Khan's allegations that prison staff knowingly housed him with violent people and spread false rumors about him being a sex offender, that these dangerous cellmates repeatedly assaulted him, and that prison staff ignored his calls for help.  *See* JA6–7, JA11–19, JA34–39, JA58–59, JA129–30.  Mr. Moisant asserts that Mr. Khan mentioned assaults during only one medical visit.  JA106–07.  But failing to mention assaults to prison medical staff at every opportunity—particularly when those assaults were incited by prison staff—is not evidence that the assaults did not happen.  If Mr. Khan believes that prison officials instigated the assaults, then he could reasonably believe that confiding the details of those assaults to other prison officials would be futile or unsafe.

Mr. Moisant acknowledges that Mr. Khan suffers neck and back pain and has repeatedly sought medical care to address it.  JA104–06. He does not dispute Mr. Khan's allegations of denied treatment for his longstanding injuries—which were caused by a prior untreated assault

42

by staff—or that the failure to treat these injuries could cause serious future harm. *See* JA17–18, JA43–45, JA64, JA123–24, JA128.

For the above reasons, this Court should not consider the government's proposed evidence on Mr. Khan's glaucoma and assault allegations. Even if this Court considers the government's proposed evidence, Mr. Khan nevertheless alleges sufficient imminent danger to proceed IFP.

## III. THIS COURT SHOULD REVERSE THE DISTRICT COURT'S DENIAL OF IFP STATUS AND DISMISSAL OF MR. KHAN'S COMPLAINT.

If this Court determines that Mr. Khan has sufficiently pled imminent danger of serious physical injury to proceed with his appeal, this Court should hold that the district court erred by denying Mr. Khan's motion to proceed IFP and dismissing his complaint. The district court's decision on imminent danger under § 1915(g) is reviewed de novo. *See e.g.*, *Chavis v. Chappius*, 618 F.3d 162, 167 (2d Cir. 2010); *cf. Ladeairous v. Sessions*, 884 F.3d 1172, 1174 (D.C. Cir. 2018) (reviewing de novo whether a person has three strikes under § 1915(g)).

Mr. Khan alleged sufficient facts in his June 2022 complaint to demonstrate imminent danger of serious physical injury. *See supra*, Part

I.A.  Between Mr. Khan's arrival at USP Thomson in April 2022 and the filing of his complaint in June 2022, he was continuously denied ophthalmological care and deprived of consistent access to his glaucoma medications.  JA7, JA10–11, JA14, JA24.  In that same timeframe, staff threatened him and transferred him into housing units with gang members and murderers, in apparent retaliation for his legal complaints and grievances—leading to near-daily assaults.  JA6–7, JA9, JA11–20, JA24.  For the same reasons as stated in Part I.A, these harms were both sufficiently serious and imminent to qualify for the § 1915(g) exception.  The allegations also had a nexus to Mr. Khan's underlying legal claims.  *See supra*, Part I.B.

## CONCLUSION

For these reasons, this Court should permit Mr. Khan to proceed on appeal IFP, reverse the district court's denial of Mr. Khan's IFP status and the dismissal of his complaint, and remand.

Respectfully Submitted,

*/s/ Erica Hashimoto*
Erica Hashimoto
*Director*

44

Eva Shell
*Supervising Attorney*

Alexis R. Casanas
Sonia Geba
*Student Counsel*

Georgetown University Law Center
Appellate Litigation Program
111 F Street NW, Suite 306
Washington, D.C. 20001
(202) 662-9555
eh502@law.georgetown.edu

Counsel for Amicus Curiae
in Support of Appellant

Dated: October 30, 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,050 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

Respectfully Submitted,

*/s/ Erica Hashimoto*
Erica Hashimoto

Georgetown University Law Center
Appellate Litigation Program
111 F Street NW, Suite 306
Washington, D.C. 20001
(202) 662-9555
eh502@georgetown.edu

Counsel for Amicus Curiae
in Support of Appellant

Dated: October 30, 2023

## CERTIFICATE OF SERVICE

I, Eva Shell, certify that on October 30, 2023, I electronically filed the

foregoing Opening Brief of Court-Appointed Amicus Curiae in Support of

Appellant via this Court's CM/ECF system, which will send notice of such

filing to counsel of record for the Appellees, and I served the Appellant,

Tsunami Khan, also known as Michael S. Owlfeather-Gorbey, by mailing

a copy of this motion to:

> Michael Gorbey
> BOP #33405-013
> USP Victorville
> U.S. Penitentiary
> P.O. Box 3900
> Adelanto, CA 92301.

> */s/ Eva Shell*
> Eva Shell
> *Supervising Attorney*
>
> Georgetown University Law Center
> Appellate Litigation Program
> 111 F Street NW, Suite 306
> Washington, D.C. 20001
> (202) 662-9555
> es1717@georgetown.edu
>
> Counsel for Amicus Curiae
> in Support of Appellant

47