NO ORAL ARGUMENT SCHEDULED

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 22-5251
(C.A. No. 22-2193)

MICHAEL S. OWLFEATHER-GORBEY, a/k/a Tsunami Khan,          Appellant,

v.

AVERY, CAPT, USP THOMPSON, et al.,          Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**BRIEF FOR THE GOVERNMENT**

MATTHEW M. GRAVES
United States Attorney

BRIAN P. HUDAK
JANE M. LYONS
Assistant United States Attorneys

DOUGLAS C. DREIER
Assistant United States Attorneys
601 D Street, NW
Washington, D.C. 20530
Douglas.Dreier@usdoj.gov
(202) 252-2551

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to Circuit Rule 28(a)(1), counsel for the government files this certificate as to parties, rulings, and related cases.

### Parties and *Amici*

Appellant is Michael S. Owlfeather-Gorbey a/k/a Tsunami Khan, who is more commonly known to this Court, and officially identified by Bureau of Prisons records, as Michael S. Gorbey, Register No. 33405-013 ("Gorbey"), and who was the plaintiff in the District Court. Appellees, who were defendants in the District Court, are generally not identified with particularity: Captain [first name unidentified] Avery, USP Thompson [i.e., United States Penitentiary Thomson, now called Federal Correctional Institution Thomson]; Warden, [name unidentified]; [first name unidentified] Doles; [first name unidentified] Grumwald; [first name unidentified] Bouse; [first name unidentified] King; Health Service Supervisor, [name unidentified]; Counselor [first name unidentified] Barnes; Counselor [first name unidentified] Graham; USP Thompson John or Jane Doe Administrative Remedy Clerk; Northern District of Illinois District Judge Philip G. Reinhard; Northern District of Illinois District Judge Iain D. Johnston; United States Attorney General Merrick Garland; Director Colette S. Peters of the Federal Bureau of Prisons; Acting Director (as of February 1, 2024) of the Administrative Office of the U.S. Courts Lee Ann Bennett; and unidentified U.S. Senate Judiciary Committee

Members, which would likely include Senators Dick Durbin, Lindsey Graham, Sheldon Whitehouse, Amy Klobuchar, Chris Coons, Richard Blumenthal, Mazie Hirono, Cory Booker, Alex Padilla, Jon Ossoff, Peter Welch, Laphonza Butler, Chuck Grassley, John Cornyn, Mike Lee, Ted Cruz, Josh Hawley, Tom Cotton, John Kennedy, Thom Tillis, and Marsha Blackburn.  None of the defendants were served or appeared below.

There were no *amici* or intervenors in the District Court, and there have been no intervenors in this Court to date.  This Court appointed Erica Hashimoto, Director of the Appellate Litigation Clinic at Georgetown University Law Center, as *amicus curiae* in support of Gorbey.

## Rulings Under Review

At issue in this appeal is the Honorable Florence Y. Pan's August 5, 2022 Order, denying Gorbey's request for leave to proceed *in forma pauperis* and dismissing the case without prejudice.

## Related Cases

This specific case has not previously been before this Court.  A Lexis Courtlink search of Gorbey's Register Number (33405-013) reveals approximately 400 federal cases in which Gorbey is a party.  Using various names generally similar to Gorbey, Owl Feather, Tsunami Khan, et cetera, Gorbey has filed approximately

27 cases in the U.S. District Court for the District of Columbia and approximately 202 cases in various U.S. Circuit Courts of Appeals.

*Michael S. Owl Feather Gorbey v. United States of America (i.e., Federal Judges), et al.*, Civ. A. No. 23-3795 (UNA) (D.D.C.) (initiated pleading and *in forma pauperis* application received on Nov. 14, 2023), may be a related case pursuant to Circuit Rule 28(C), although the complaint is not currently available on the docket.

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION...............................................................1

STATEMENT OF THE ISSUES..................................................................1

PERTINENT STATUTE .............................................................................2

COUNTERSTATEMENT OF THE CASE...................................................3

    I. GORBEY IS A PROLIFIC THREE-STRIKER WHO REPEATEDLY INVOKES THE IMMINENT DANGER EXCEPTION.......................................3

    II. THIS COURT REBUFFED SIMILAR ALLEGATIONS IN ANOTHER APPEAL GORBEY FILED.................................................................................9

    III. GORBEY REPEATS HIS ALLEGATIONS IN THIS CASE. .....................11

SUMMARY OF ARGUMENT ..................................................................16

STANDARD OF REVIEW ........................................................................18

ARGUMENT ............................................................................................18

    I. THE COURTS MUST USE AVAILABLE TOOLS TO ENSURE THAT ONLY GENUINE IMMINENT DANGERS YIELD IFP STATUS. .................18

    II. WHEN ASSESSING THE PLAUSIBILITY OF A PRISONER'S ALLEGATIONS OF IMMINENT DANGER OF SERIOUS PHYSICAL INJURY, THE COURT CAN AND SHOULD CONSIDER MORE RECENT EVENTS. ..............................................................................................25

    III. THERE MUST BE A NEXUS BETWEEN THE IMMINENT DANGER AND WHAT THE COMPLAINT INTENDS TO REDRESS. ..........................29

    IV. GORBEY FAILS TO SATISFY § 1915(G)'S "IMMINENT DANGER OF SERIOUS PHYSICAL INJURY" REQUIREMENT. ........................................34

        A. This Litigation Is an Effort to Obtain Marijuana, Not to Ensure Compliance with Medical Advice Regarding Gorbey's Glaucoma. ..............35

        B. Gorbey's History of Assaults Does Not Pose an Imminent Danger........39

        C. Gorbey's Assertion That Various Courts' Usage of Section 1915(g) Poses an Imminent Danger to Him Is Without Merit. ...............................................43

CONCLUSION .........................................................................................44

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Abdul-Akbar v. McKelvie*,
    239 F.3d 307 (3d Cir. 2001) ............................................................ 30

\*  *Asemani v. U.S. Citizenship & Immigr. Servs.*,
    797 F.3d 1069 (D.C. Cir. 2015) ............................... 26, 27, 28, 30

*Atherton v. D.C. Off. of Mayor*,
    567 F.3d 672 (D.C. Cir. 2009) ..................................................... 18

*Ball v. Famiglio*,
    726 F.3d 448 (3d Cir. 2013) .................................................... 23, 24

*Ball v. Hummel*,
    577 F. App'x 96 (3d Cir. 2014) ..................................................... 32

*Beame v. Friends of the Earth*,
    434 U.S. 1310 (1977) ..................................................................... 42

*Blair-Bey v. Quick*,
    151 F.3d 1036 (D.C. Cir. 1998) ............................................... 24, 25

*Bruce v. Samuels*,
    577 U.S. 82 (2016) .................................................................... 29, 30

*Butler v. Pendergraff*,
    434 F. App'x 377 (5th Cir. 2011) ................................................. 32

*Chavis v. Chappius*,
    618 F.3d 162 (2d Cir. 2010) ......................................................... 26

*Coleman v. Tollefson*,
    575 U.S. 532 (2015) ............................................................ 23, 24, 31

*Cretacci v. Hare*,
    No. 21-5786, 2022 WL 17176781 (6th Cir. Nov. 23, 2022) ........................... 41

*Daker v. Ward*,
    999 F.3d 1300 (11th Cir. 2021) ..................................................... 43

*Daker v. Ward*,
    No. 17-13384, 2019 U.S. App. LEXIS 1473 (11th Cir. Jan. 16, 2019)....... 42-43

*Denton v. Hernandez*,
    504 U.S. 25 (1992) ........................................................................ 24

*Feather-Gorbey v. Att'y Gen.*,
    Civ. A. No. 22-0053, 2022 WL 1693363 (S.D. W. Va. May 26, 2022) ............. 5

*Feather-Gorbey v. Black*,
    Civ. A. No. 20-2011, 2021 WL 37993 (M.D. Pa. Jan. 5, 2021) ........................ 6

*Feather-Gorbey v. Bureau of Prisons*,
    Civ. A. No. 20-0867, 2020 WL 6107050 (M.D. Pa. Oct. 15, 2020) .................. 6

*Feather-Gorbey v. Gass*,
    Civ. A. No. 20-1050, 2020 WL 6107049 (M.D. Pa. Oct. 15, 2020) .................. 6

*Feather-Gorbey v. Swann*,
    Civ. A. No. 20-2378, 2021 WL 1741854 (M.D. Pa. May 3, 2021) ............... 5, 6

*Feather-Gorbey v. Warden*,
    Civ. A. No. 22-0354, 2023 WL 5356253 (S.D. W. Va. June 23, 2023) ............ 5

*Flast v. Cohen*,
    392 U.S. 83 (1968) ........................................................................ 33

*Fourstar v. Garden City Grp., Inc.*,
    875 F.3d 1147 (D.C. Cir. 2017) ...................................................... 18

*Gorbey v. Crickard*,
    Civ. A. No. 20-1116, 2021 WL 1811563 (D.S.C. May 6, 2021) ...................... 6

*Gorbey v. Davis*,
    Civ. A. No. 23-0429, 2023 WL 4865671 (M.D. Fla. July 31, 2023) ............ 4, 11

*Gorbey v. Dunbar*,
    Civ. A. No. 18-2754, 2019 WL 5339607 (D. Md. Apr. 24, 2019) ...................... 5

*Gorbey v. Geisinger Eye Ctr.*,
    Civ. A. No. 20-2433, 2021 WL 1792086 (M.D. Pa. May 5, 2021) ................ 5, 6

*Gorbey v. Mubarek*,
    Civ. A. No. 19-0220, 2019 WL 5593284 (D. Md. Oct. 30, 2019) ......... 6, 7, 8, 9

*Gorbey v. U.S. Penitentiary Thomson*,
    Civ. A. No. 22-50160, 2022 WL 19342514 (N.D. Ill. June 15, 2022) ......... 6, 12

*Gorbey v. United States*,
    54 A.3d 668 (D.C. 2012) ...................................................................... 3

*Gorbey v. United States*,
    55 F. Supp. 3d 98 (D.D.C. 2014) ......................................................... 3

*Gorbey v. United States*,
    No. 22-50330, 2022 WL 22298309 (N.D. Ill. Nov. 28, 2022) ................ 4, 6, 11

*Gorbey v. USP Thomson*,
    No. 22-2129, 2023 WL 2755587 (7th Cir. Apr. 3, 2023) .................................... 12

*Hagans v. Lavine*,
    415 U.S. 528 (1974) ............................................................................. 18

*Hall v. United States*,
    44 F.4th 218 (4th Cir. 2022) ............................................................... 33

*Hamm v. DeKalb County*,
    774 F.2d 1567 (11th Cir. 1985) .......................................................... 38

*In re Gorbey*,
    Civ. A. No. 22-7039, 2022 WL 22298310 (N.D. Ill. Dec. 16, 2022) ................ 4

*In re Grant*,
    635 F.3d 1227 (D.C. Cir. 2011) .......................................................... 31

*In re McDonald*,
    489 U.S. 180 (1989) ............................................................................. 21

*In re Sassower*,
    10 U.S. 4 (1993) ................................................................................... 28

*In re Sindram*,
    498 U.S. 177 (1991) ...................................................................... 19, 21

*Jones v. Bock*,
    549 U.S. 199 (2007) ............................................................................. 31

*Jones v. Horne*,
    634 F.3d 588 (D.C. Cir. 2011) ............................................................ 18

*Judd v. Lappin*,
    No. 04-5186, 2004 U.S. App. Lexis 24422 (D.C. Cir. Nov. 22, 2004) ........... 32

*Lewis v. Sullivan*,
  279 F.3d 526 (7th Cir. 2002) ............................................................. 30

*Linda R.S. v. Richard D.*,
  410 U.S. 614 (1973) ........................................................................ 33

*Loumiet v. United States*,
  948 F.3d 376 (D.C. Cir. 2020) ......................................................... 20

\* *Mitchell v. Fed. Bureau of Prisons*,
  587 F.3d 415 (D.C. Cir. 2009) ........................................ 18, 19, 21, 22

*NARA v. Favish*,
  541 U.S. 157 (2004) .................................................................... 20, 22

*Neitzke v. Williams*,
  490 U.S. 319 (1989) ........................................................................ 24

*Owlfeather-Gorbey v. Mubarek*,
  No. 19-7767, 2020 WL 6888273 (4th Cir. Jan. 31, 2020) ................... 9

*People for the Ethical Treatment of Animals v. Dep't of Agric.*,
  918 F.3d 151 (D.C. Cir. 2019) ......................................................... 20

\* *Pettus v. Morgenthau*,
  554 F.3d 293 (2d Cir. 2009) ...................................... 11, 31, 32, 33, 34

\* *Pinson v. Dep't of Just.*,
  964 F.3d 65 (D.C. Cir. 2020) .................. 3, 9, 23, 25, 26, 29, 35, 39, 40, 41, 42

*Shepherd v. Annucci*,
  921 F.3d 89 (2d Cir. 2019) ......................................................... 21, 23

*Smith v. Galipeau*,
  Civ. A. No. 23-0217, 2023 WL 7156515 (N.D. Ind. Oct. 30, 2023) ............... 25

*Sossamon v. Lone Star State of Tex.*,
  560 F.3d 316 (5th Cir. 2009) ........................................................... 20

*Stine v. Fed. Bureau of Prisons*,
  571 F. App'x 352 (5th Cir. 2014) ..................................................... 32

*Taylor v. Watkins*,
  623 F.3d 483 (7th Cir. 2010) ........................................................... 22

*Thompson v. DEA*,
    492 F.3d 428 (D.C. Cir. 2007) ........................................................... 31

*Thornburgh v. Abbott*,
    490 U.S. 401 (1989) ........................................................... 20

*Tolan v. Cotton*,
    572 U.S. 650 (2014) ........................................................... 19

*Westlake v. Lucas*,
    537 F.2d 857 (1st Cir.1981) ........................................................... 39

*Williams v. Paramo*,
    775 F.3d 1182 (9th Cir. 2015) ........................................................... 26

**Statutes**

28 U.S.C. § 1291 ........................................................... 1

28 U.S.C. § 1331 ........................................................... 1

* 28 U.S.C. § 1915 ........................................... 1-4, 9-13, 16-18, 21-23, 29-34, 43-44

# GLOSSARY

| | |
|---|---|
| Amicus Br. | Brief of Amicus for Appellant (#2024427) |
| Aplt. Br. | Brief of Appellant (#2019291) |
| Aplt. Mot. to Stay | Motion to Stay Appeal filed by Appellant (#2018046) |
| Gorbey | Appellant |
| IFP | *in forma pauperis* |
| JA[#] | Joint Appendix (#2024427) |
| PLRA | Prison Litigation Reform Act |

## STATEMENT OF JURISDICTION

Gorbey[1] framed his complaint as a "Consolidated *Bivens* – F.T.C.A. [Federal Tort Claims Act] Claim," JA03, invoking the District Court's jurisdiction under 28 U.S.C. § 1331. A timely notice of appeal of the District Court's August 5, 2022 Order was filed on September 20, 2022. *See, e.g.*, JA 25–26, JA27. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.      Whether a prisoner's allegations of imminent danger must be uncritically accepted by the Court.

II.     Whether the Court may consider events that pre-date or post-date the filing of the notice of appeal in determining if Gorbey was under imminent danger of serious physical injury at the time he noticed his appeal.

III.    Whether a three-strikes prisoner who does not seek to mitigate the alleged imminent danger can invoke 28 U.S.C § 1915(g)'s exception.

IV.     Whether Gorbey has shown a non-speculative, non-vague, imminent danger of serious physical injury that logically relates to and could reasonably be redressed through the claims in the complaint, considering that he moved to stay this appeal, has been transferred out of the prison in question, and refuses to comply with

---

[1]      Federal Bureau of Prisons records identify Appellant as Michael S. Gorbey, JA67, JA72, JA80, and Gorbey has repeatedly referred to himself as "Gorbey" in this proceeding, JA10, JA14, JA17.

medical advice regarding the treatment of glaucoma because he instead wants marijuana, which has not been proven effective as a treatment for glaucoma.

## PERTINENT STATUTE

**28 U.S.C. § 1915(g):**

(g) In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

## COUNTERSTATEMENT OF THE CASE

### I. GORBEY IS A PROLIFIC THREE-STRIKER WHO REPEATEDLY INVOKES THE IMMINENT DANGER EXCEPTION.

[In January 2008,] Michael Gorbey approached a woman near the U.S. Capitol and asked for directions to the Supreme Court. *See Gorbey v. United States*, 54 A.3d 668, 675 (D.C. 2012). He carried a shotgun in his hand, a sword on his back, a bulletproof vest across his chest, and several shotgun shells and hunting knives in his backpack. *See id.* Gorbey explained that he was on his way to a meeting with Chief Justice John Roberts. *See id.*

The woman reported Gorbey to the police, who arrested him. *See id.* They searched his truck, parked illegally nearby, where they found hundreds of rounds of ammunition, a rifle scope, and a homemade bomb. *See id.* at 676. Gorbey was subsequently charged and convicted on multiple weapons-related counts in D.C. Superior Court. *See id.* He is currently serving a twenty-year prison sentence.

*Gorbey v. United States*, 55 F. Supp. 3d 98, 100–01 (D.D.C. 2014).

More recently, this Court recognized that, as a prisoner, "Gorbey . . . has become a prolific litigator, filing scores of suits across the country." *Pinson v. Dep't of Just.*, 964 F.3d 65, 72 (D.C. Cir. 2020). "Gorbey and [another inmate] are three-strikers—that is, both have had three or more actions dismissed as 'frivolous, malicious, or [for] fail[ure] to state a claim' and, consequently, are barred from proceeding IFP 'unless [they are] under imminent danger of serious physical injury.'" *Id.* at 68 (quoting 28 U.S.C. § 1915(g)).

Gorbey has spread his appeals unevenly across the Circuits: Second (approximately five), Third (approximately twenty-four), Fourth (approximately

ninety-one), Fifth (approximately four), Seventh (approximately thirteen), Eighth (approximately one), Ninth (approximately one), Tenth (approximately eleven), Eleventh (approximately eight), and D.C. (approximately forty-four). Because Gorbey's "abusive litigating methods display a complete disregard for court decorum" and a demonstrated "commitment to frivolously filing cases," Gorbey is subject (as of the filing of this brief) to a pre-suit filing injunction in the Northern District of Illinois. *Gorbey v. United States*, Civ. A. No. 22-50330, 2022 WL 22298309, at *2 (N.D. Ill. Nov. 28, 2022); *see also In re Gorbey*, Civ. A. No. 22-7039, 2022 WL 22298310, at *1–2 (N.D. Ill. Dec. 16, 2022).

Gorbey's allegations pertaining to imminent danger vary from case to case, with courts constantly hearing shifting and contradictory allegations. *E.g.*, *Gorbey v. Davis*, Civ. A. No. 23-0429, 2023 WL 4865671, at *2 (M.D. Fla. July 31, 2023) ("Plaintiff's complaints that he is being denied access to court due to previous case's dismissal pursuant to 28 U.S.C. [§] 1915(g), his past interactions with inmates, being able to shower only once a week, harassing cell searches, and allegations of mail tampering do not meet this standard. . . . Plaintiff undercuts his allegations of imminent danger [regarding his glaucoma] by stating that 'surgeries could blind him faster and drops and pills don't help him it's clear that (Gorbey's) advance condition requires *he* have medical marijuana.' Therefore, Plaintiff's claims are insufficient to meet the imminent danger exception because he claims that the treatment the

4

Bureau of Prisons would provide would neither help his condition nor prevent it from worsening.") (emphasis in original; citation omitted); *Feather-Gorbey v. Att'y Gen.*, Civ. A. No. 22-0053, 2022 WL 1693363, at *3 (S.D. W. Va. May 26, 2022) (rejecting claims that Gorbey has been denied medical treatment and subject to physical assault: "Mr. Feather-Gorbey has not been denied medical treatment for his glaucoma; he simply refuses to accept the prescribed treatment"); *Gorbey v. Geisinger Eye Ctr.*, Civ. A. No. 20-2433, 2021 WL 1792086, at *2–3 (M.D. Pa. May 5, 2021) (finding that Gorbey's allegations of being denied proper treatment for his glaucoma, access to the courts, and access to the administrative remedy program failed to meet the imminent danger standard); *Feather-Gorbey v. Swann*, Civ. A. No. 20-2378, 2021 WL 1741854, at *2–3 (M.D. Pa. May 3, 2021) (finding that Gorbey failed to demonstrate imminent danger based upon his claims that he was assaulted and threatened by inmates, denied proper medication for glaucoma, deliberately exposed to COVID, and suffered injuries after falling); *Gorbey v. Dunbar*, Civ. A. No. 18-2754, 2019 WL 5339607, at *7 (D. Md. Apr. 24, 2019) (finding that Gorbey failed to demonstrate imminent danger of harm based on his alleged need for a lower bunk pass, medical braces/shoes, and glaucoma treatment), *aff'd*, 787 F. App'x 824 (4th Cir. 2019); *see also Feather-Gorbey v. Warden*, Civ. A. No. 22-0354, 2023 WL 5356253, at *3 (S.D. W. Va. June 23, 2023) (collecting

more than a dozen recent cases where courts have found that Gorbey failed to demonstrate imminent danger).  As one court succinctly summarized the matter:

> Further, plaintiff continues to repeatedly raise identical claims that this court and other federal courts have consistently rebuffed and found do not demonstrate imminent danger.  *See Gorbey v. U.S. Penitentiary Thomson*, Civ. A. No. 22-50160, 2022 WL 19342514, at *1–2 (N.D. Ill. June 15, 2022) (finding that neither plaintiff's allegations of imminent harm due to being adversarially housed with violent individuals nor his allegations about glaucoma treatment stated a claim); *Gorbey*, 2021 WL 1792086, at *2–3 (finding that Gorbey's allegations of being denied proper treatment for his glaucoma, access to the courts, and access to the administrative remedy program failed to meet the imminent danger standard); *Gorbey v. Mubarek*, Civ. A. No. 19-0220, 2019 WL 5593284, at *5 (D. Md. Oct. 30, 2019) (finding that Gorbey's glaucoma did not create an imminent danger to his safety where Gorbey declined the surgical procedure that a glaucoma specialist determined was necessary to prevent the disease from causing him to lose his eyesight); . . . *Feather-Gorbey*, 2021 WL 1741854, at *2–3 (allegations of denial of proper medication for glaucoma); *Feather-Gorbey v. Bureau of Prisons*, Civ. A. No. 20-0867, 2020 WL 6107050, at *2 (M.D. Pa. Oct. 15, 2020) (denied proper medical treatment for his glaucoma); *Feather-Gorbey v. Gass*, Civ. A. No. 20-1050, 2020 WL 6107049, at *2 (M.D. Pa. Oct. 15, 2020) (failed to receive proper medical treatment for his glaucoma); *Feather-Gorbey v. Black*, Civ. A. No. 20-2011, 2021 WL 37993, at *2 (M.D. Pa. Jan. 5, 2021) (allegations that staff threatened him with a new, abusive cellmate).

*Gorbey*, 2022 WL 22298309, at *2 (citations cleaned up); *see also Gorbey v. Crickard*, Civ. A. No. 20-1116, 2021 WL 1811563, at *4 (D.S.C. May 6, 2021) (similar list).

For instance, in the District of Maryland, Gorbey alleged serious side effects from various glaucoma drugs that he had been prescribed.  *Gorbey*, 2019 WL

5593284, at *3.  He further asserted that he had not been seen by appropriate medical professionals.  *Id.*  The district court found, however, that in 2019 Gorbey was seen by an ophthalmologist and a glaucoma specialist, who diagnosed Gorbey with the condition, and that, even prior to a formal diagnosis, Gorbey had received multiple different drugs for glaucoma based on an earlier medical screening.  *Id.*  When Gorbey again complained of side effects from the medication, no objective signs of a reaction were observed by the medical professional who evaluated him, and when he was instructed to report to Health Services if a reaction recurred so that the symptoms could be observed and addressed, Gorbey refused to comply.  *Id.*

After diagnosing Gorbey with severe glaucoma on August 1, 2019, the glaucoma specialist recommended bilateral surgery, beginning with the left eye.  *Id.* at *4.  The Bureau of Prisons approved the surgery and scheduled it for September 30, 2019, at an outside surgery center.  *Id.*  Gorbey, however, refused to sign the surgery center's consent forms and instead altered them.  *Id.*  He objected to language consenting to "any surgery deemed necessary," and he refused to acknowledge that the surgery posed a "threat of death, paralysis, stroke or heart attack."  *Id.*  He also objected to a drug that was prescribed for use before surgery, because Gorbey claimed the drug causes glaucoma.  *Id.*

When the prison's Assistant Health Services Administrator learned of Gorbey's objections and his contention that the surgery and any alternatives had not

been fully explained to him, she contacted the outside surgery center and obtained new consent forms, education materials, and a form about Gorbey's patient rights and responsibilities. *Id.* She left the materials for Gorbey to review, and later returned with his health care provider to discuss any questions or concerns. *Id.* Gorbey still refused to consent to the surgery due to the possibilities of stroke, heart attack, paralysis, and death, and he objected to use of the drug because he believed it would cause glaucoma. *Id.*; *id.* at *4 n.4. The health services representative "spen[t] 'a long period of time'" educating Gorbey and explained that "'there is always a possibility of side effects with any surgery but only he could make a decision to consent to the surgery.'" *Id.* at *4. Gorbey ultimately refused to sign the consent forms and was informed that such refusal was also a refusal of the surgery. *Id.* Gorbey acknowledged that the risk of refusing surgery could include "permanent loss of vision." *Id.*

The district court observed that "[i]t is axiomatic that the imminent danger of physical harm requirement relates to some action or inaction by the subject prisoner's custodians." *Id.* at *5. The court found that the lack of treatment of Gorbey's glaucoma was not the government's fault; it was his "own choice to decline the surgical procedure that a glaucoma specialist has determined is necessary to prevent the disease from causing him to lose his eyesight." *Id.* The court found that there was no showing "that the course of treatment provided for Gorbey's glaucoma

8

has either created an imminent danger to his safety, or violated his Eighth Amendment right to remain free from cruel and unusual punishment." *Id.* To the contrary, the court found that the government's attempts to address Gorbey's glaucoma "through medication, referrals to specialists, and an offer of surgical intervention which he declined" refuted Gorbey's allegations of imminent danger of serious physical harm. *Id.* at *1, *5.

Gorbey appealed but then failed to prosecute, so the Fourth Circuit accordingly dismissed the appeal. *Owlfeather-Gorbey v. Mubarek*, No. 19-7767, 2020 WL 6888273, at *1 (4th Cir. Jan. 31, 2020).

## II. THIS COURT REBUFFED SIMILAR ALLEGATIONS IN ANOTHER APPEAL GORBEY FILED.

This matter is not the first time that this very Court has heard Gorbey's allegations. In 2018, Gorbey filed an action in the district court that brought claims exceedingly similar to the ones in this action. *See Pinson*, 964 F.3d at 72. Specifically, "Gorbey alleged that various federal judges who presided over his previous cases and appeals violated the Federal Tort Claims Act" because "the judges restricted his access to the courts by reading section 1915(g)'s imminent-danger exception too narrowly." *Id.* Like here, he sought an extraordinary sum of damages and that § 1915(g) "be reformed." *Id.* The district court denied Gorbey's request to proceed IFP, and Gorbey appealed. *Id.*

On appeal, this Court entered an order to show cause why Gorbey should not be required to pay the full appellate filing fee. *Id.* Gorbey responded on January 25, 2019, and made various allegations as to why the Court should find that he faced imminent harm, including that the Bureau of Prisons "cancelled his December 2018 eye-doctor appointment, leaving him without medication or treatment for his glaucoma," and had taken various actions that put him at increased risk of physical injury, "serious sickness," or "death," including exposing him to toxic black mold. *Id.*

The Court's ensuing opinion settled three issues in this Circuit: (1) "the conditions prisoners faced at the time of noticing their appeals determine their eligibility to proceed under the [imminent danger] exception," *id.* at 69; (2) the Court "may consider imminent-danger allegations newly offered on appeal," *id.* at 70; and (3) "prisoners must demonstrate a nexus between the harms they allege and the claims they bring," *Id.* at 71. The Court left two issues open. First, the Court had "no need to decide, however, whether and under what circumstances section 1915(g)'s 'limited office' permits courts to venture beyond prisoners' allegations in making the imminent-danger determination." *Id.* at 70–71 (citation omitted). Second, the Court had "no need to articulate a precise test for evaluating section 1915(g)'s nexus requirement." *Id.* at 73.

On the record regarding Gorbey, the Court concluded that, "[b]ecause Gorbey's claims do not seek 'to obtain a judicial remedy *for* an imminent danger,' they lack even a minimal nexus to the harms alleged and, accordingly, cannot support Gorbey's IFP request." *Id.* (emphasis in original; citation omitted; quoting *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009)).  Therefore, the Court denied Gorbey's request to proceed on appeal IFP.  *Id.* at 76.  Instead of paying the filing fee and continuing, in that proceeding, to pursue his claims under the Federal Tort Claims Act and his claims regarding § 1915(g)'s application, Gorbey elected to file substantially similar cases in other courts and try to see if he would find more receptive ears for his § 1915(g) arguments.  *See, e.g.*, *Gorbey*, 2023 WL 4865671, at *2 (Middle District of Florida); *Gorbey*, 2022 WL 22298309, at *2 (Northern District of Illinois).

## III.   GORBEY REPEATS HIS ALLEGATIONS IN THIS CASE.

On July 14, 2022, in the District of Columbia, Gorbey filed the operative complaint here, which reflects a mailing date of June 30, 2022.  JA03–22.  Gorbey's complaint repeatedly references certain Northern District of Illinois judges, *see, e.g.*, JA04, JA06–07, JA13, JA16, JA19, JA20, and he identified two proceedings in the Northern District of Illinois as "dealing with the same facts."  JA03–04.  Gorbey appears to have filed this complaint shortly after receiving an order from the Northern District of Illinois, dated June 15, 2022, that found that he failed to qualify

under § 1915(g)'s imminent danger exception.  *See Gorbey*, 2022 WL 19342514, at *2 ("[P]laintiff has previously raised these identical imminent danger claims, and has been repeatedly rebuffed by courts, which have found that his allegations do not show imminent danger of serious injury.").  Despite bringing his collateral attack in this District, Gorbey also pursued a direct appeal in the Seventh Circuit, which resulted in vacatur on April 3, 2023.  *Gorbey v. USP Thomson*, No. 22-2129, 2023 WL 2755587, at *2 (7th Cir. Apr. 3, 2023).[2]

As to the complaint in the present proceeding, this complaint is verbose and presents a longwinded account of various grievances, but the central thrust is stated in the first and last sentences of his statement of claim: first, "the named defendants in Washington D.C. are again allowing prison staff to subject me to atypical & significant hardships & excessive punishment while allowing the federal courts [in] Illinois, Texas & Virginia to continue misusing § 1915(g) as a categorical prohibitive financial barrier deliberately narrowing the gateway & not letting me pass while knowingly wantonly & obdurately subjecting me to physical damages & injuries," JA06; and last, "[w]hile the clown houses posing as our Court Houses keep

---

[2]    The Seventh Circuit's order was premised on different injury allegations: "Gorbey has alleged a serious injury (bone fractures, nerve damage, and 'unbearable pains' in his neck and upper extremities from the assault).  And he has alleged the ongoing refusal of staff for months to treat his fractures, nerve damage, and pain with something other than ineffective pain pills and an X-ray exam whose results they kept from him."  *Gorbey*, 2023 WL 2755587, at *2.

denying me access letting it all ha[p]pen & even encouraging it when these clowns like [Northern District of Illinois District Judges] Reinhard & Johnston jump in immediately shutting (me) out & threat[e]ning to sanction (me) for having even filed to the clown house (i.e. court) its f***en unreasonable & getting old & I demand it be[] f***en fixed e-f***ken-mediatly," JA21.

As relief, Gorbey seeks $50,000,000,000.00, immediate removal from custody, the closure of Federal Correctional Institution Thomson (formerly called United States Penitentiary Thomson), "immediate reform of § 1915(g) & our judicial systems of the Admin. Off. Fed. Cts. & Senate Judiciary Committee ASAFP [i.e., as soon as f****** possible]," an injunction to be kept away from District Judges Reinhard and Johnson and others, and so on.  JA07–08.

On August 5, 2022, the Honorable Florence Y. Pan denied Gorbey's IFP motion after finding that Gorbey "has not shown that he qualifies" as facing imminent danger of serious physical injury.  JA25.

Gorbey filed a timely notice of appeal on September 20, 2022.  JA29.  The notice of appeal requested leave to appeal IFP.  JA29.  Gorbey again complained of an assault by another inmate, the denial of certain medical treatment, and the selection of his cellmate.  JA29–30.

On September 28, 2022, the Clerk's Office entered a show cause order regarding nonpayment of the docketing fee.  On December 13, 2022, Gorbey filed

his response to the order.  JA33–86.  Gorbey's response makes a bevy of allegations and generally complains of physical assaults by other inmates, the denial of certain medical care, and IFP denials he has received in other circuits.  JA33–54.

On February 23, 2023, the Court ordered the government to reply to Gorbey's response.   Consistent with the Court's order, the government filed its reply, JA87–111, which included a declaration from the Health Services Administrator at United States Penitentiary Thomson, JA100–08.  The declaration described a review of Gorbey's electronic medical records and medication administration records, including prescription refills, and confirmed that "Gorbey has received regular eye exams and has not missed any of his prescription medication for his glaucoma." JA104.  It confirmed that "Gorbey twice declined eye surgery in 2019 to address his worsening glaucoma." *Id.*

The declaration also discussed Gorbey's allegations of injuries from other inmates and chronic physical pain.  JA104–07.  Specifically, on September 11, 2022, just nine days before noticing his appeal of this action, "Gorbey had a clinic visit complaining of pressure and pain in his right jaw and ear, alleging that he was struck on that side two weeks earlier." JA106.  Gorbey accordingly received x-rays, "which showed no fractures, no injuries to the soft tissues, and no damage to his sinuses or other structures." *Id.*  Gorbey submitted a sick call on September 30, 2022, just after noticing his appeal, regarding his chronic pain in his "neck, back, and shoulder" and

14

he "specifically denied any other concerns" at that time.  JA107.  The declaration confirms that Gorbey's "electronic medical records contain no mention of any of the alleged assaults or injuries on or near the dates described."  *Id.*  Instead, "[b]etween May 9 and December 8, 2022, Gorbey's electronic medical records show no less than 20 discrete clinical encounters, which show regular treatment for glaucoma and chronic neck pain, as well as timely and appropriate treatment for a single assault."  *Id.*

In response, Gorbey filed a surreply, JA112–27, a supplement, JA128–36, and a motion for sanctions.  On August 1, 2023, the Court denied Gorbey's motion for sanctions and directed the parties to address: (1) whether Gorbey has alleged a pattern of conduct placing him in imminent danger of serious physical injury, based on his allegations of individual incidents occurring before the filing of the complaint and before and after the filing of the appeal; and (2) whether the Court should accept as true Gorbey's allegations of danger where the government seeks to rebut those allegations with its own evidence.

On September 15, 2023, Gorbey filed a motion to stay this appeal.  Aplt. Mot. to Stay.  The motion sought a stay of an indefinite duration to permit Gorbey "a period of time to file an amended petition."  *Id.* at 19.  Without any evidence, Gorbey's motion avers that, to treat his glaucoma, "now only medical marijuana is safe & effective for Gorbey."  *Id.* at 11.  Gorbey has alleged that he "is a Monacan

Native American Indian & descendant from Mongolia & China, who worship ancestral & nature gods & whom use marijuana for life on a daily basis for religious & medical self healings," and that, because he was "deprived of marijuana," "he developed glaucoma as a result as his eyes had become dependant on marijuana." Aplt. Br. at 3. The Court denied Gorbey's motion to stay on October 4, 2023.

## SUMMARY OF ARGUMENT

This appeal presents the Court with an opportunity to address the question it left open in a previous appeal brought by Gorbey: whether the Court should uncritically accept a three-strikes prisoner's allegations of imminent danger of serious physical injury or whether the Court may use available tools to ensure that only genuine imminent dangers yield IFP status. To avoid manipulation of § 1915(g), a chorus of other circuit courts appropriately require prisoners to demonstrate an objective belief by a reasonable person that the alleged danger is imminent. In using all available tools to ensure that only genuine imminent dangers yield IFP status, the Court may consider evidence that is offered and may consider events that predate and postdate the noticing of the appeal in order to assess whether an objectively reasonable belief of imminent danger existed at the time the appeal was noticed.

Further, in one of Gorbey's prior appeals, the Court determined that a prisoner must demonstrate a nexus between the claim contained in a complaint and the

imminent danger at issue. Standing principles are a natural analogy to § 1915(g)'s nexus requirement, and if the prisoner does not seek to prevent the harm in question through this action, then there is an insufficient nexus between the alleged danger and the complaint, and IFP status may not be afforded to a three-strikes prisoner.

In this appeal, Gorbey has stated that the only medical care that will address his glaucoma is daily marijuana. Not only is that false, but the American Academy of Ophthalmology, American Glaucoma Society, and the Glaucoma Research Foundation uniformly agree that marijuana is not recommended to treat glaucoma, and research confirms that marijuana use is actually harmful to glaucoma patients. The Court cannot uncritically accept Gorbey's allegations that he needs marijuana. As for Gorbey's alleged pattern of assaults, Gorbey has failed to demonstrate that he had an objectively reasonable belief of imminent danger of serious physical injury at the time he noticed his appeal. The fact that Gorbey moved to stay this appeal for an indefinite duration further demonstrates that he did not have an objectively reasonable belief of imminent danger. In addition, Gorbey's meta-attack on § 1915(g)—i.e., his allegation that other courts' past or future applications of § 1915(g) put him at risk of imminent danger—is likewise without merit.

Accordingly, the Court should affirm the judgment of the District Court.

## STANDARD OF REVIEW

The Court's review under 28 U.S.C. § 1915(g) is de novo.  *Fourstar v. Garden City Grp., Inc.*, 875 F.3d 1147, 1150 (D.C. Cir. 2017).

## ARGUMENT

### I.    THE COURTS MUST USE AVAILABLE TOOLS TO ENSURE THAT ONLY GENUINE IMMINENT DANGERS YIELD IFP STATUS.

It is a prisoner's burden—not the Court's or a defendant's—to establish the facts about each § 1915(g) criterion, and it is a burden of both production and persuasion.  *See Mitchell v. Fed. Bureau of Prisons*, 587 F.3d 415, 421 (D.C. Cir. 2009) ("[U]nless we require prisoners to demonstrate the actual existence of an imminent threat, otherwise disqualified filers could obtain IFP status simply by adding general allegations of endangerment").  Courts do not automatically credit implausible allegations.  *See Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) ("[F]ederal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit,' 'wholly insubstantial,' 'obviously frivolous,' 'plainly unsubstantial,' or 'no longer open to discussion.'") (citations omitted); *Jones v. Horne*, 634 F.3d 588, 595 (D.C. Cir. 2011) ("[T]he pleadings must 'suggest a plausible scenario' that 'sho[ws] that the pleader is entitled to relief.'") (quoting *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009)).

Assigning the burden in this way makes sense, because IFP proceedings are "nonadversarial." *Mitchell*, 587 F.3d at 420. When a three-strikes prisoner seeks IFP status on appeal, he is not seeking relief against the appellee. Rather, he is asking the Court to exercise its discretion to afford "a privilege made available by the courts," *id.*, because he has shown he is in imminent danger of a serious physical injury that might be prevented by relief obtained through the lawsuit. IFP matters must be considered with an eye towards a court's "duty to deny *in forma pauperis* status to those individuals who have abused the system." *In re Sindram*, 498 U.S. 177, 180 (1991). Thus, the burden on a prisoner with three strikes to offer sufficient allegations is not insignificant.

In many appellate IFP matters, the appellee plays no role, and this Court regularly denies IFP motions without hearing from the government. Even when the Court does seek the government's assistance in evaluating a prisoner's allegations, the government has no burden; instead, it simply offers the Court help weighing the prisoner's allegations, about which the Court already has some question that prompted the order requiring the government's response. Moreover, even if the appellee were considered to be the opposing party for purposes of evaluating a prisoner's motion for IFP status, any disputed facts should be construed, as at summary judgment, in the light most favorable to the non-movant (here, the government). *E.g.*, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

19

It is especially important for the Court to avoid uncritically accepting a prisoner's assertions when assessing allegations of government misconduct by a prisoner known to file abusive lawsuits, especially given the "broad discretion" afforded to prison officials in prison management. *See Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) ("In the volatile prison environment, it is essential that prison officials be given broad discretion[.]").  Indeed, "[a]llegations of government misconduct are easy to allege and hard to disprove, so courts must insist on a meaningful evidentiary showing." *NARA v. Favish*, 541 U.S. 157, 175 (2004) (citation and quotation marks omitted); *see also Loumiet v. United States*, 948 F.3d 376, 385 (D.C. Cir. 2020) ("[C]harges of a retaliatory motive are easy to make, hard to disprove[.]").  There are good reasons for evaluating prisoners' imminent danger allegations with extra care, because Bureau of Prisons officials should be presumed to carry out their duties appropriately.  *See People for the Ethical Treatment of Animals v. Dep't of Agric.*, 918 F.3d 151, 157 (D.C. Cir. 2019) ("[G]overnment actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties.") (alteration in original; quoting *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009)).

In *Mitchell*, this Court recognized that courts have "discretion to protect [themselves] from abusive filers, and proper exercise of that discretion requires that

we act on the basis of as much information as we can obtain."  587 F.3d at 419.
Indeed, the Supreme Court has held that safeguarding the courts is not merely
discretionary but, rather, is a "duty."  *Sindram*, 498 U.S. at 180.  "Every paper filed
with the Clerk of th[e] Court, no matter how repetitious or frivolous, requires some
portion of the institution's limited resources.  A part of the Court's responsibility is
to see that these resources are allocated in a way that promotes the interests of
justice," *In re McDonald*, 489 U.S. 180, 184 (1989), and uncritically authorizing IFP
status, if the allegations in support are half-truths, misapprehensions, or
misrepresentations, misdirects the Court's resources away from potentially
meritorious claims brought by those who have not abused the legal system.

An overly credulous approach to § 1915(g) allegations can enable
sophisticated prisoner litigants who know to "utter[ ] the right words."  *Shepherd v.
Annucci*, 921 F.3d 89, 95 (2d Cir. 2019).  For such reasons, other circuits expressly
permit inquiry into danger allegations, and this Court should, too.  *See id.* at 94 ("All
of our sister circuits to have confronted this question" permit "a narrow evidentiary
inquiry into the prisoner-litigant's fear of imminent danger.").

The law accommodates IFP allegations' liberal construction while ensuring
courts are not hoodwinked by experienced, clever, or dissembling litigants.  The
alternative would foster "an open-ended exception that would eviscerate the [three
strikes] rule," *Mitchell*, 587 F.3d at 421 (citation omitted), and make courts here

magnets for three-strikes prisoners with few meaningful ties to the jurisdiction. Indeed, the text of § 1915(g) requires courts to determine whether "the prisoner is under imminent danger of serious physical injury," 28 U.S.C. § 1915(g), not simply determine whether "the prisoner [alleges that he] is under imminent danger of serious physical injury," *contra id.*

To avoid manipulation of § 1915(g), the Court should require prisoners, for example, to "produce evidence that would warrant" an objective belief "by a reasonable person" that the alleged danger is imminent and that government misconduct, such as allegedly improperly withheld medical care, is occurring. *Favish*, 541 U.S. at 174; *see also Mitchell*, 587 F.3d at 421–22 ("[U]nless [this Court] require[s] prisoners to demonstrate the actual existence of an imminent threat, otherwise disqualified filers could obtain IFP status simply by adding general allegations of endangerment," which would enable the endangerment exception to "'swallow the rule'").

Multiple circuits have now held that, in order to ensure that the imminent danger exception is not abused, courts "must act to resolve the [factual] conflict" about whether an imminent danger exists. *Taylor v. Watkins*, 623 F.3d 483, 485 (7th Cir. 2010) ("A contrary conclusion would mean that a three-strikes plaintiff could proceed IFP whenever his allegations of imminent danger were facially plausible, even if the defendant had incontrovertible proof that rebutted those allegations. Such

22

a rule would allow easy evasion of the three-strikes rule."); *see also Shepherd*, 921 F.3d at 94 (every "circuit[ ] to have confronted this question ha[s] held that district courts—upon challenge by a defendant—may conduct a narrow evidentiary inquiry into the prisoner-litigant's fear of imminent danger") (citing Third, Fourth, Seventh, and Tenth Circuit decisions, and holding for the Second Circuit that it is "crucial" that a court be able to "conduct a limited inquiry" to prevent abuse of § 1915(g) by a prisoner who merely "utter[s] the right words"); *cf. Coleman v. Tollefson*, 575 U.S. 532, 539 (2015) (courts should protect against § 1915(g) interpretations that "produce a leaky filter"). The duty to protect against imminent danger exception misuse applies just as much to an appellate court as to a district court. *See Pinson*, 964 F.3d at 70 ("To be sure, having appellate courts parse such allegations 'deviates from the typical approach of having a district court take a first look at a factual matter,' but Congress can, and in the PLRA did, assign atypical roles to courts in particular circumstances.") (citations omitted).

Thus, when a prisoner's assertion is disputed with well-supported facts, such as through officials' declarations, prison records, medical literature, or the prisoner's own actions on appeal, which "contradict the prisoner's allegations" of imminent danger, the prisoner's assertions should not be uncritically accepted. *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013), *partially abrogated on other grounds*

*by Coleman*, 575 U.S. at 469; *see also Ball*, 726 F.3d at 468 (rejecting untreated injury allegation as "not supported by the record").

The IFP statute "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless,' such as 'claims describing fantastic or delusional scenarios.'" *Id.* (quoting *Denton v. Hernandez*, 504 U.S. 25, 32 (1992)); *accord Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Thus, a court need not "'accept as having an arguable basis in fact all allegations that cannot be rebutted by judicially noticeable facts,'" *Ball*, 726 F.3d at 469 (quoting *Denton*, 504 U.S. at 32), nor is a court prevented from "'discrediting factual claims of imminent danger that are clearly baseless.'" *Id.* (citation omitted).

The alternative encouraged by amicus (Amicus Br. at 34–40) directly contradicts the intent of the PLRA. *See Blair-Bey v. Quick*, 151 F.3d 1036, 1040 (D.C. Cir. 1998) ("The PLRA's legislative history makes clear that Congress's principal intent was to reduce frivolous litigation by prisoners challenging conditions of their confinement."). Imagine a prisoner who files identical complaints for injunctive relief in all ninety-four district courts. The prisoner alleges that his warden is a witch who has cast a spell on him that will cause him to turn into a newt within one week—which, while a fantastical allegation, is reminiscent of complaints

24

that prisoners have actually filed, *see, e.g.*, *Smith v. Galipeau*, Civ. A. No. 23-0217, 2023 WL 7156515, at *2–3 (N.D. Ind. Oct. 30, 2023). Under amicus's theory, the prisoner would need to be afforded IFP status in each of the ninety-four district courts and then the district courts would likely dismiss his claims as patently unsubstantial. The prisoner would then appeal to all twelve regional circuit courts, alleging that the Witchy Warden has cast a new spell that again will result in the prisoner becoming a duck within one week. Under amicus's theory, not only must the circuit courts accept his allegations as true and grant him IFP status, but the circuit courts would be unable to consider the fact that the passage of time demonstrates that the prisoner's allegations regarding the first "newt" spell are contradicted by reality. This is wholly inconsistent with the intent "to reduce frivolous litigation by prisoners." *Blair-Bey*, 151 F.3d at 1040. The Court should accordingly answer the question it left open in *Pinson*, 964 F.3d at 70–71, and confirm that it will not uncritically accept a prisoner's allegations of serious physical injury.

## II.   WHEN ASSESSING THE PLAUSIBILITY OF A PRISONER'S ALLEGATIONS OF IMMINENT DANGER OF SERIOUS PHYSICAL INJURY, THE COURT CAN AND SHOULD CONSIDER MORE RECENT EVENTS.

On the temporal question, this Court has resolved that "prisoner-litigants must show that they faced imminent danger when they noticed their appeals." *Pinson*, 964 F.3d at 69. Thus, the moment in time that is relevant is the moment when the

notice of appeal is filed. *Id.* But for a court to determine the lay of the land at that moment, it must consider surrounding events. Past and future events are indicative as to whether the prisoner indeed faced imminent danger of serious physical injury when he noticed his appeal.

For instance, this Court has previously noted that both the Second and Ninth Circuits have held that allegations of a pattern of threats or beatings may satisfy the imminent danger exception where the claims seek to change the dangerous prison conditions in question. *Asemani v. U.S. Citizenship & Immigr. Servs.*, 797 F.3d 1069, 1076 (D.C. Cir. 2015) (citing *Williams v. Paramo*, 775 F.3d 1182, 1190 (9th Cir. 2015), and *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). The pattern of threats or beatings may suffice if the harms reflect an "ongoing pattern of acts" that thereby demonstrates that it will continue imminently. *Chavis*, 618 F.3d at 170. But this pattern is not relevant if there are reasons to suspect that the pattern has been broken and is unlikely to or will not recur. *See Asemani*, 797 F.3d at 1076 ("The beatings, which took place while Asemani was in the general prison population, do not indicate that Asemani continued to face imminent danger [thereafter].").

Likewise, the Court recognizes that more recent events may demonstrate whether a prisoner faced imminent danger of serious physical injury at the time he noticed his appeal. *See Pinson*, 964 F.3d at 70 ("Aligning again, amicus and the government agree that we may consider imminent-danger allegations newly offered

on appeal. Once more, we concur, as it would make little sense for the PLRA to demand prisoners show they faced imminent danger at the time of their appeals only then to prohibit them from introducing allegations to support that showing."). Again, subsequent events may reflect whether the prisoner faced imminent danger of serious physical injury at the time he noticed his appeal.

Courts routinely find that, even when IFP status was granted previously in a proceeding, if the circumstances that had supported granting IFP status are shown to be invalid, IFP status should be revoked. For instance, in another of Gorbey's appeals, the district court had granted IFP status on appeal. *Gorbey v. District of Columbia*, Civ. A. No. 10-1751, R.14 (D.D.C. Feb. 15, 2011). This Court revoked appellate IFP status when it concluded that Gorbey had three strikes and had not shown imminent danger. *See Gorbey v. District of Columbia*, No. 10-7175 (D.C. Cir. June 8, 2011) ("As [Gorbey] does not allege that he is in imminent danger of serious physical injury, he is not entitled to proceed in forma pauperis."). Likewise, in *Asemani*, the district court had granted the government's motion to vacate district court IFP status because the plaintiff had three strikes and his imminent danger allegations about threatened harm were insufficient. 797 F.3d at 1073. Because this Court found that the prisoner was not entitled to IFP status on appeal, and the plaintiff did not thereafter pay the appellate filing fee, the Court did not decide whether the district court's IFP revocation was proper, but the Court indicated that

it would reject the prisoner's challenge to the revocation if he did pursue the appeal. *Id.* at 1078–79 ("We note that Asemani's arguments in favor of proceeding IFP on appeal directly mirror his arguments challenging the district court's decision to revoke IFP status. As we have already rejected those arguments in this opinion, Asemani, were he to choose to pay the filing fee and proceed with his appeal, would likely be paying 'to have us say essentially what we have already said about his case.'").

Thus, where the nexus between a lawsuit's claims and the imminent injury that supported IFP status has dissolved—such as where a court learns either that the danger has abated, or, after submission of evidence by the defendant, that an adequate danger never existed—a court should revoke IFP status. Such revocation is necessary to guard against abuse of IFP status and to channel "limited [court] resources to the claims of petitioners who have not abused our process." *In re Sassower*, 510 U.S. 4, 5–6 (1993). When there is no chance that a lawsuit will prevent the danger alleged—because it does not presently exist—then the justification for IFP status has evaporated and the filing fee becomes due, thereby instating the PLRA's incentive structure for discouraging non-meritorious prisoner litigation.

Amicus's alternative, which would prohibit the Court from considering new evidence on appeal, cannot be sustained and violates the PLRA. To return to the

Witchy Warden example, just as the Court can consider that the prisoner did not turn into a newt a week after filing his action in the district court, the Court can consider that the prisoner did not turn into a duck a week after noticing his appeal. These events, both before and after the notice of appeal was filed, further demonstrate that at the time that the notice of appeal was filed, the prisoner did not face imminent danger of serious physical injury. The mere fact that the prisoner alleged that the Witchy Warden posed an imminent danger cannot be accepted uncritically.

## III. THERE MUST BE A NEXUS BETWEEN THE IMMINENT DANGER AND WHAT THE COMPLAINT INTENDS TO REDRESS.

Both the PLRA's "text and context," *Bruce v. Samuels*, 577 U.S. 82, 90 (2016) (construing § 1915(b)), require that a prisoner may invoke the § 1915(g) imminent danger exception to proceed IFP only if his claims have a nexus to the claims at issue in the suit, as this Court has already concluded. *See Pinson*, 964 F.3d at 71 (joining with "every court of appeals to have passed on this question" and "conclud[ing] that section 1915(g) contains a nexus requirement"). Any other approach would produce a "leaky filter," *Coleman*, 575 U.S. at 539, thereby enabling prisoners with histories of abusive litigation to swamp courts with civil suits unrelated to the imminent danger.

Although the word "nexus" is not in § 1915(g)'s text, the statute's language incorporates the principle. The term "imminent" imposes "temporal constraints" by focusing the danger inquiry on the "present," and does not inquire "'whether [a

prisoner] later in fact suffers' (or earlier suffered) such a threat." *Asemani*, 797 F.3d at 1074 (citation omitted); *see also Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (3d Cir. 2001) ("By using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred.").

That understanding of the PLRA's text compels the conclusion that the imminent danger exception applies only if the claim might "prevent [the identified] serious physical injuries from occurring." *Abdul Akbar*, 239 F.3d at 319; *see also id.* ("Congress included an exception to the 'three strikes' rule for those cases in which it appears that judicial action is needed as soon as possible to prevent serious physical injuries from occurring in the meantime."); *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002) (imminent danger exception is "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate"). Where a claim does not have any logical nexus to the imminent danger alleged, allowing a three-strikes prisoner to proceed IFP is unwarranted, because the litigation would not directly or indirectly protect against the impending harm.

In *Bruce*, the Supreme Court used both "text and context" to interpret § 1915 and to adopt the reading that "more vigorously serves the statutory objective of containing prisoner litigation," while acknowledging that another § 1915 "safety-valve provision" guards against barring prisoners entirely from the courts. 577 U.S.

at 90.  In *Coleman*, the Supreme Court similarly considered both § 1915's text and its purpose in announcing its interpretation.  575 U.S. at 539 ("[T]he statute's purpose favors our interpretation.").

This Court likewise has consistently interpreted § 1915(g) based on its "driving purpose"—namely, to "to preserve the resources of both the courts and the defendants in prisoner litigation," *Thompson v. DEA*, 492 F.3d 428, 438 (D.C. Cir. 2007), and to "filter out the bad claims and facilitate consideration of the good," *Jones v. Bock*, 549 U.S. 199, 204 (2007).  The Court also, in construing other § 1915 portions, has ensured interpretations "further[ ] the purpose of the [PLRA]."  *In re Grant*, 635 F.3d 1227, 1230 (D.C. Cir. 2011).  For the imminent danger exception, "good" claims are those where the impending physical harm may be avoided or further illuminated if the claim proceeds.  But there is no "good" reason for a claim that cannot reasonably prevent the imminent physical harm, or that does not relate specifically to the conditions creating the alleged harm, to proceed without prepayment of fees by a prisoner who has repeatedly brought abusive litigation.

Having performed similar analysis of the PLRA's text and context, the Second Circuit required a link between the imminent danger and the claims being litigated.  *Pettus*, 554 F.3d at 298–99 (requiring prisoners to show that the imminent danger of serious physical injury "is fairly traceable to unlawful conduct asserted in the complaint and [that] a favorable judicial outcome would redress that injury").

"Absent some nexus between a complaint's claims and its allegation that a plaintiff is under imminent danger of serious physical harm," "an indigent prisoner with a history of filing frivolous complaints could, by merely alleging an imminent danger, file an unlimited number of lawsuits, paying no filing fee, for anything from breach of a consumer warranty to antitrust conspiracy." *Id*. at 297–98. *Pettus* further held that a nexus does not exist if "it is speculative to assert that judicial relief will actually redress these allegedly unlawful conditions." *Id.* at 299. It is insufficient for the dangers to be merely "connected" to the conduct in the complaint. *Contra* Amicus Br. at 33. The imminent danger exception serves to provide an avenue for judicial review to prevent "serious physical injury." 28 U.S.C. § 1915(g). This is "the *raison d'être* of the exception." *Pettus*, 554 F.3d at 298.

Additional circuits have reached similar conclusions. *See Ball v. Hummel*, 577 F. App'x 96, 96 n.1 (3d Cir. 2014); *Stine v. Fed. Bureau of Prisons*, 571 F. App'x 352, 354 (5th Cir. 2014); *Butler v. Pendergraff*, 434 F. App'x 377, 378 (5th Cir. 2011). This Court also, in an unpublished judgment, denied IFP status, finding that "the circumstances that have allegedly exacerbated the [injury] are not at issue in this appeal." *Judd v. Lappin*, No. 04-5186, 2004 U.S. App. Lexis 24422, at *1 (D.C. Cir. Nov. 22, 2004). Although the Fourth Circuit has recently disagreed to an extent, the Fourth Circuit confirmed that "a fairly traceable relationship [must] exist[ ] between [the prisoner's] alleged imminent danger and the claims set forth in

his . . . complaint." *Hall v. United States*, 44 F.4th 218, 231 (4th Cir. 2022). The *Hall* court found that the inmate "passed this threshold because he alleged that the prison's continued denial and delay in providing medical treatment are directly causing his worsening physical and medical conditions which present an imminent danger of serious physical injury." *Id.*

Like standing doctrine, § 1915(g) focuses on preventing a foreseeable, non-remote, non-speculative injury. Thus, standing principles are a "natural analogy" to § 1915(g)'s nexus requirement. *See Pettus*, 554 F.3d at 297–98 (standing law is a "natural analogy" that supports a § 1915(g) nexus requirement "because the statute identifies a particular injury-in-fact (i.e., the imminent danger of serious physical injury) that Congress singled out for special protection"). Standing doctrine requires a nexus between an injury-in-fact and the claim asserted. *See, e.g.*, *Linda R.S. v. Richard D.,* 410 U.S. 614, 617–18 (1973) (requiring "a sufficient nexus"); *Flast v. Cohen*, 392 U.S. 83, 102 (1968) (requiring "a logical nexus").

Similarly, "[a]bsent some nexus between a complaint's claims and its allegation that a plaintiff is under imminent danger of serious physical harm, the injury-in-fact that Congress so carefully excepted from the general requirement that a three-strikes litigant pay his filing fees could go unaddressed by the litigation—a result clearly contrary to the *raison d'être* of the exception itself." *Pettus*, 554 F.3d at 298. By contrast, if "a complaint seeks to redress an imminent danger that is fairly

traceable to allegedly unlawful conduct complained of in the pleading, the three-strikes litigant has shown that he fits squarely within § 1915(g)'s 'escape hatch' and that payment of a filing fee should be excused." *Id.*  Accordingly, the Court should hold, at a minimum, that the "imminent danger" exception is inapplicable unless the prisoner's complaint seeks to thwart the imminent danger in question with reasonable means.

## IV.   GORBEY FAILS TO SATISFY § 1915(g)'S "IMMINENT DANGER OF SERIOUS PHYSICAL INJURY" REQUIREMENT.

In applying these principles, the Court should find that this case fails to qualify for the imminent danger exception.  Gorbey alleges three different dangers as bases for invoking § 1915(g)'s safety valve.  First, he asserts that he is not receiving proper treatment for his glaucoma, but Gorbey's claims lack a nexus to the harms alleged. Aplt. Br. at 2–11.  Second, he asserts that various Bureau of Prisons' officials are conspiring to put him at increased threat of physical violence from other inmates or have injured him, or that other inmates have injured him, but again the complaint lacks a nexus to the harms alleged.  *Id.* at 11–25.  Third, he alleges that § 1915(g) is being used as a bar to prevent him from raising additional claims of imminent danger in the future, but this meta-assault on § 1915(g) lacks imminency.  *Id.* at 6, 25. Amicus supports the first two arguments, but not the third.  *See* Amicus Br. at 22–33. Gorbey's purported harms collapse upon scrutiny.

34

### A.    This Litigation Is an Effort to Obtain Marijuana, Not to Ensure Compliance with Medical Advice Regarding Gorbey's Glaucoma.

Amicus and the government agree that acquired blindness from worsening glaucoma poses a danger of serious physical injury, but the treatment that Gorbey seeks (marijuana) is inconsistent with the advice of Gorbey's doctors and is not anticipated to prevent Gorbey's injury. *See* JA72; *see also* Aplt. Mot. to Stay at 11. As a result, there is an insufficient nexus between this litigation and addressing Gorbey's chronic and worsening condition. *See Pinson*, 964 F.3d at 73 ("[Gorbey's] claims neither address the conditions of his confinement nor 'aim[ ] at preventing [the] future harms' he purportedly faced. Were Gorbey to prevail and obtain all the relief he requested, that relief would in no way redress the complained-of dangers. . . . Because Gorbey's claims do not seek 'to obtain a judicial remedy *for* an imminent danger,' they lack even a minimal nexus to the harms alleged and, accordingly, cannot support Gorbey's IFP request.") (emphasis in original; citations omitted).

Gorbey's glaucoma is a chronic condition that has been severe for years. As the documents Gorbey provided establish, Gorbey has been aware of a concern of "accelerating the eventual outcome of blindness" since at least May 2020, more than two years before bringing the current lawsuit. JA72. Those same records indicate that it is "Gorbey's past actions regarding his eye care [that] have profoundly contributed to this poor prognosis." *Id.*

35

Gorbey has misinterpreted his doctor's note as indicating that any surgery could cause him to go blind. *Compare id.* ("This occurs when the glaucoma is so advanced that when you perform surgery for the glaucoma, you 'snuff-out' the remaining, functioning retinal tissue. . . . With that in mind, [Dr. Fassero] recommended two ophthalmologists who exclusively perform glaucoma surgery on these types of cases."), *with* Aplt. Br. at 5 ("Any physical treatment could destroy remaining good retinal tissue & blind Gorbey faster."). The doctor's note, albeit unartfully worded, does not indicate that all physical treatment could result in blindness; to the contrary, the doctor suggested referral to an ophthalmologist with experience performing surgery "on these types of cases." JA72. The doctor's note appears to address certain incisional surgeries that are known to correlate (rarely) with snuff-out syndrome (also called "wipe-out"). *See* Irshad Ahamed Subhan, et al., *Vision "Wipe-Out" Phenomena Following a Nonincisional Laser Procedure in the Management of Narrow-Angle Glaucoma*, 34 Kerala J. Ophthalmol. 167, 167 (2022) ("'Wipeout' phenomenon is a rare but notorious complication associated with incisional surgeries in patients with advanced glaucoma. It is also reported to occur following cataract and retinal incisional surgeries. There are no reports of a wipe-out after a commonly performed laser procedure."), *available at* https://journals.lww.com/kjop/_layouts/15/oaks.journals/downloadpdf.aspx?trckng _src_pg=ArticleDisplayControl&an=01553342-202234020-00017.

The article cited by amicus (Amicus Br. at 7 n.3) further demonstrates that surgery is still appropriate for patients at risk of suffering from snuff-out syndrome. *See* Sana' Muhsen, *Severe Visual Loss and Recovery Post Trabeculectomy-A Case Report*, 10 Am. J. Opththalmol. Case Reps. 91, 94 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5816026/pdf/main.pdf ("In summary, the wipeout syndrome is a rare yet possible consequence after glaucoma surgery in eyes with advanced disease. Precautions such as careful monitoring of perioperative [intraocular pressure] spikes and careful attention to avoid undiagnosed high [intraocular pressure] or severe hypotony, changes in anesthesia techniques may help avoid this rare but catastrophic event."). The medical professionals are fully in agreement. *See* JA72.

Gorbey, however, disagrees. Without citing any evidence, Gorbey asserts that in his lay opinion "only medical marijuana is safe & effective for Gorbey." Aplt. Mot. to Stay at 11. This is wrong. *See* Xiaoshen Sun, et al., *Marijuana for Glaucoma: A Recipe for Disaster or Treatment*, 88 Yale J. Biology & Med. 265, 268 (2015) ("Medical marijuana has been shown to lower the [intraocular pressure] for brief periods of time but carries a greater side effect profile than standard therapeutic options. The amount of daily doses to maintain the [intraocular pressure]-lowering effect is likely to lead to [cannabis use disorder] and result in physical and psychological harm to the patient. . . . Further research must be done before medical

37

marijuana, in any form, can be considered as a safe and effective treatment option for glaucoma patients."), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4553646/pdf/yjbm_88_3_265.pdf; David Turbert, et al., *Does Marijuana Help Treat Glaucoma or Other Eye Conditions?*, Am. Acad. Ophthalmol., Dec. 13, 2023, https://www.aao.org/eye-health/tips-prevention/medical-marijuana-glaucoma-treament ("Glaucoma and other eye conditions cannot be treated with cannabis or other compounds derived from marijuana[.] . . . [T]he American Academy of Ophthalmology does not recommend marijuana or other cannabis products for the treatment of glaucoma. The American Glaucoma Society agrees, and the Glaucoma Research Foundation has come to the same conclusion.").

Gorbey does not want any of the other treatment he would be offered or that he would receive. Gorbey has "twice declined eye surgery in 2019 to address his worsening glaucoma," JA104, and it is "Gorbey's past actions regarding his eye care [that] have profoundly contributed to this poor prognosis," JA72. Gorbey seeks to enlist this Court's help in giving him a federally illegal treatment that is not approved and that actually is expected to cause him harm. *See* Sun, et al., *supra*, at 268 (noting that using marijuana to treat glaucoma "is likely to . . . result in physical and psychological harm to the patient"). This is not the Court's role. *See, e.g.*, *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("This evidence shows that Hamm received significant medical care while at the jail. Although Hamm may

have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (1st Cir.1981) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in . . . tort law.").

As there is an insufficient nexus between the relief Gorbey requests (marijuana) and the purported harm (blindness from glaucoma), this Court should say again what it said less than four years ago in another appeal that Gorbey brought: "Were Gorbey to prevail and obtain all the relief he requested, that relief would in no way redress the complained-of dangers. . . . Because Gorbey's claims do not seek 'to obtain a judicial remedy *for* an imminent danger,' they lack even a minimal nexus to the harms alleged and, accordingly, cannot support Gorbey's IFP request." *Pinson*, 964 F.3d at 73 (emphasis in original; citation omitted).

## B.    Gorbey's History of Assaults Does Not Pose an Imminent Danger.

Gorbey next asserts that he faces an imminent physical danger because prison officials were housing him with dangerous inmates before he filed his appeal or were otherwise complicit in certain physical assaults.  Gorbey rehashes a history of alleged assaults dating back to 2012, more than eleven years, and nine institutions, before the current matter.  Aplt. Br. at 11–21.  Gorbey's alleged assaults include the following: (1) assault by unidentified staff in 2012 at Federal Correctional Institution

39

Otisville, New York; (2) assault by non-defendant staff in 2015 at Federal Correctional Institution Edgefield, South Carolina; (3) assault by another inmate in 2017 at United States Penitentiary Lee, Virginia; (4) assault by other inmates in 2018 at United States Penitentiary Hazelton, West Virginia; (5) assault by other inmates in 2019 at United States Penitentiary Cumberland, Maryland; (6) assault by other inmates in 2020 at Federal Correctional Institution Estill, South Carolina; (7) assault by non-defendant staff in 2021 at Federal Correctional Institution Beckley, West Virginia; (7) "almost daily" assaults from another inmate (Kowalcyk) in June 2022 at Federal Correctional Institution Thomson, Illinois; (8) assault by a different inmate (Riggs) in July 2022 at Federal Correctional Institution Thomson; (9) assault by inmate Riggs in August 2022 at Federal Correctional Institution Thomson; and (10) assault by an inmate in June 2023 at United States Penitentiary Coleman, Florida.

This Court has previously ruled that incidents that "predate [a prisoner's] notice of appeal by . . . eight months" cannot support a finding of imminent danger. *Pinson*, 964 F.3d at 74. With Gorbey having filed his notice of appeal in September 2022, that eliminates the majority of Gorbey's alleged incidents—(1)–(6), *supra*. Further, the alleged assault in June 2023 cannot support Gorbey's request to proceed under the imminent-danger exception because it significantly post-dates the filing of the notice of appeal. *See id.* ("As for the allegations in Pinson's letter motions, they

40

all concern incidents that occurred post-June 2019, more than six months after Pinson noticed her appeal. None of those allegations can support Pinson's request to proceed under the imminent-danger exception[.]") (citations omitted).

That leaves three discrete insults in June, July, and August 2022, by two different inmates. This is insufficient to create a pattern demonstrating that serious physical injury is imminent. *See Cretacci v. Hare*, No. 21-5786, 2022 WL 17176781, at *9 (6th Cir. Nov. 23, 2022) ("Altogether, these three incidents, taking into account the full picture, are simply insufficient to demonstrate that the County has a 'clear and persistent pattern of violations.'"). As for the incidents themselves, Gorbey recognizes that he was moved away from Kowalcyk on June 28, 2022, more than two months prior to noticing his appeal, and thus no further incidents with him occurred or were anticipated to occur at the time he noticed his appeal. *See* Aplt. Br. at 15–16.

With respect to Riggs, Gorbey suffered "no fractures, no injuries to the soft tissues, and no damage to his sinuses or other structures." JA106. Gorbey did not assert that he thought Riggs would attack him again at the time he noticed his appeal, and Gorbey recognizes that he was moved out of Riggs' cell prior to noticing his appeal. Aplt. Br. at 17. Gorbey notes that, on December 1, 2022, unidentified staff sought to "try to force Gorbey back in cells with inmate Riggs" and allegedly locked the two in the same cell, but no physical harm occurred. *Id.* at 18. Although the

41

Court should not consider the December 1, 2022 non-assault on its own merit because it post-dates the noticing of the appeal, *Pinson*, 964 F.3d at 74, it does further demonstrate the unreasonableness of Gorbey's assertions of imminent danger of serious physical injury, given that no physical assault is alleged to have occurred at that time. Aplt. Br. at 18.

Further, Gorbey's actions on appeal demonstrate that he does not face imminent danger. On September 15, 2023, Gorbey moved to stay this appeal for an indefinite duration pending the filing of an amended complaint. A party that is facing imminent danger of serious physical injury would not move for a stay of an indefinite duration. *See Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977) ("The applicants' delay in . . . seeking a stay vitiates much of the force of their allegations of irreparable harm.").

In any event, were Gorbey to prevail, he would not obtain the relief requested and, therefore, these purported injuries "lack even a minimal nexus to the harms alleged and, accordingly, cannot support Gorbey's IFP request." *Pinson*, 964 F.3d at 73. As Gorbey recognizes, he has been moved out of Federal Correctional Institution Thomson and is no longer cellmates with either of the inmates in question. *See* Aplt. Br. at 21. Accordingly, his issues with these cellmates are moot, and the purported imminent danger has passed, which would necessitate the revocation of IFP status. *See Daker v. Ward*, No. 17-13384, 2019 U.S. App. LEXIS 1473, at *3–4

(11th Cir. Jan. 16, 2019) ("[S]ince he filed the instant motions seeking leave to proceed, he has twice been moved to a different prison facility, first to Macon State Prison ('MSP'), then to Valdosta State Prison ('VSP'). . . . Thus, the allegations he has put forth are moot, as they no longer are relevant to whether he is in imminent danger of serious physical injury."); *accord Daker v. Ward*, 999 F.3d 1300, 1307 (11th Cir. 2021).

For all these reasons, Gorbey cannot demonstrate on this record that these alleged assaults demonstrated an imminent danger of serious physical injury.

### C.    Gorbey's Assertion That Various Courts' Usage of Section 1915(g) Poses an Imminent Danger to Him Is Without Merit.

What this case is primarily about is not Gorbey's medical treatment or assaults, but rather Gorbey's perception that various courts are abusing § 1915(g). That is the reason that Gorbey has brought this action in this Circuit, where he is not incarcerated, and has sued multiple Judges of the Northern District of Illinois, the Senators who are on the Senate Judiciary Committee, and the Acting Director of the Administrative Office of the U.S. Courts.  JA06.  It is the reason that the first and last sentences of his statement of claim both pertain to his grievances with the way courts have interpreted § 1915(g).  JA06, JA21.  Gorbey believes that "these clown houses posing as court houses are hostile impeding prisoners['] access & are a valid threat to Gorbey" and that "our Administrative Office of Fed. Cts. is broken, receiving complaints on deaf ears doing nothing to administrate the errors in fed. cts.

& our U.S. Senate Judiciary Committee are a bunch of f**s, doing nothing but trying to open the gates of Hell to f**inism within our country with impersonating US Ho-Mo-Joe Biden."  JA21.

It is not this Court's prerogative to enforce the administration of justice in other circuits.  To the extent that Gorbey files complaints asserting imminent danger of serious physical injury in other courts, those courts may assess his allegations. Gorbey's meta-attack on § 1915(g) fails to demonstrate that § 1915(g) itself imposes an imminent danger of serious physical injury on him.

## CONCLUSION

The Court should deny leave to proceed on appeal without prepayment of fees.

MATTHEW M. GRAVES
United States Attorney

BRIAN P. HUDAK
JANE M. LYONS
Assistant United States Attorneys

*/s/ Douglas C. Dreier*
DOUGLAS C. DREIER
Assistant United States Attorneys
601 D Street, N.W.
Washington, D.C.  20530
(202) 252-2551
douglas.dreier@usdoj.gov

*Counsel for the United States of America*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2nd day of February, 2024, I caused this

Brief to be served by the United States Postal Service, first-class postage prepaid

and addressed to:

> Michael S. Gorbey a/k/a Michael Owlfeather-Gorbey a/k/a Tsunami Khan
> Reg. # 33405-013
> USP Coleman
> P.O. Box 1033
> Coleman, FL 33521

Additionally, Court-appointed *Amicus* counsel were served by the Court's CM/ECF

system.

/s/ *Douglas C. Dreier*
DOUGLAS C. DREIER
Assistant United States Attorney

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this Brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,623 words, excluding the parts of the brief exempted under Rule 32(f) and D.C. Cir. Rule 32(e), according to the count of Microsoft Word.

*/s/ Douglas C. Dreier*
DOUGLAS C. DREIER
Assistant United States Attorney